OPINION OF THE COURT
Norman C. Ryp, J.
a. ISSUE
What “oppressive actions” by controlling corporate shareholders justify involuntary judicial dissolution or “buy out” purchase of 20% or more minority shares under newly enacted sections 1104-a, 1111 (subd [b], par [3]) and 1118 (subds [a], [b]) of the Business Corporation Law (L 1979, ch 217, §§ 1-3, eff June 11, 1979)?
This legislative application of corporate minority rights summons court expression upon issues of first impression.
In both these motions No. 145 and No. 146 of May 29, 1980, consolidated herein for disposition, the petitioner *26 Myron F. Topper individually and as principal of Keystone Trade and Development Corp. (“Topper”) seeks judicial dissolution pursuant to section 1104-a of the Business Corporation Law, of two close corporations each wherein he holds a one-third interest.
b. parties’ contentions
Petitioners maintain that various actions by the two controlling shareholders, discharging petitioner as an employee and officer of each corporation, constitute “oppressive actions” within the meaning of section 1104-a (subd [a], par [1]) of the Business Corporation Law. Although petitioners also charge fraud, these allegations appear unsubstantiated. The thrust of petitioners’ allegations and submitted proofs is that respondent majority shareholders’ behavior has been “shameful” and “oppressive”. As an alternative to dissolution, petitioners ask the court to direct a “buy out” of Topper’s shares by the remaining two controlling shareholders of respondent at the fair market value. Apparently, these two majority shareholders are willing to purchase petitioners’ interest at a negotiated price but not for a value set by outside appraisers.
In opposition, respondents contend that petitioners have not been harmed by the freeze-out because his interest as a nonparticipating shareholder remains intact. Furthermore, the majority shareholders maintain they discharged Topper with justification and, thus, their conduct escapes statutory sanction.
C. APPLICABLE FACTS AND FINDINGS
The facts are substantially uncontroverted. It appears that these two three-man corporations operate two pharmacies in prominent Manhattan hotels, the New York Sheraton and the New York Hilton. Admittedly, business has flourished in the brief one-year period during most of which petitioner Topper has actively participated. The corporations were formed by shareholder agreements respectively executed on March 30, April 2 and 11,1979. These shareholder agreements provide no method for transfer or purchase of shares (except in case of death), nor do they specify the *27 terms of employment for Topper and shareholder Goldstein who were intended to play active management roles. All regarded the third shareholder, Reingold, in the nature of a silent partner.
The petitions and the supporting affidavits in this case show conclusively, and respondents do not deny, that petitioner Topper associated himself with Goldstein and Rein-gold in Center City Enterprises, Inc., and Park Sheraton Pharmacy, Inc., in the expectation of being an active participant in the operation of both corporations. To that end, petitioner terminated an employer-employee relationship in the drug business of 25-years duration with Continental Drug Corporation and uprooted himself and transported his family from North Miami, Florida, to New York to begin life as an entrepreneur. Petitioner put his life savings into the venture. Additionally, he executed personal guarantees of a lease extension and of promissory notes for the purchase price of his stock interest from Reingold and as part of his investment, petitioner signed promissory notes in the amount of $31,000. During this dispute, petitioner failed to pay the February, 1980 installment and Reingold is currently suing petitioner in a separate action to collect the entire sum. All admit that, until his discharge, petitioner was the trio’s most active member. The controlling shareholders do not deny that petitioner’s expectations, not expressed in any written agreement, formed a necessary component of the corporation’s formation.
Nor do the majority stockholders deny that on or about February 8, 1980, they discharged petitioner as an employee, terminated his salary (after his salary had been raised from $30,000 to $75,000 in the first year), removed him as an officer and as a cosignatory on the corporate bank accounts, and changed the locks on the corporate offices to exclude him. Yet, the controlling shareholders continue to maintain petitioner has suffered no harm because his one-third interest remains intact. Coincidentally, no one disputes that this corporation has paid no dividends in its short life.
*28 Whether the controlling shareholders discharged petitioner for cause or in their good business judgment is irrelevant. The court finds that the undisputed understanding of the parties was such at the time of the formation of the corporations that the respondents’ actions have severely damaged petitioner’s reasonable expectations and constitute a freeze-out of petitioner’s interest; consequently, they are deemed to be “oppressive” within the statutory framework.
Despite a finding of “oppressive” conduct, judicial dissolution of a thriving corporation is a matter of discretion and may not be undertaken lightly (Business Corporation Law, § 1104-a, subd [b]; Matter of Groll, NYLJ, May 10,1979, p 10, col 6).
In section 1104-a of the Business Corporation Law situations, the court is empowered, as an alternate remedy, to permit the purchase for fair value of the petitioner’s share by the other shareholders of the corporation if such shareholders “elect to purchase the shares owned by the petitioners at their fair value and upon such terms and conditions as may be approved by the court.” (Business Corporation Law, § 1118, subds [a], [b].)
The issue now becomes whether the controlling shareholders have made such an election, in fact and law.
Respondent shareholders in their affidavits and briefs employ a contradictory position. On one hand, said respondents strenuously oppose judicial dissolution yet, on the other hand, they reject any proposals by petitioner to buy him out at fair market value. Similarly, respondents want no interference, judicial or otherwise, with their ability to negotiate with petitioner for the purchase price. Such tactics, so disastrous for minority shareholders, are surely the target of subject recently enacted amendments.
The court deems the language used by respondents in their opposing papers to assent, in fact and law, to an election to buy out petitioner; as set forth in opposing affidavits, of Leonard Goldstein, dated May 6,1980, and of Martin Reingold, dated May 7, 1980, wherein it is stated *29 and affirmed by affiants that, “we have agreed to negotiate a reasonable price for the purchase of Topper’s stock.”
D. STATUTES
As noted above, this is a case of first impression of interpretation and application of the recently enacted, interrelated amendments to sections 1104-a, 1111 (subd [b], par [3]) and 1118 of the Business Corporation Law, which became effective June 11,1979. The relevant portions of the statutes read as follows:
1. Section 1104-a of the Business Corporation Law (petition for judicial dissolution under special circumstances) provides:
“(a) The holders of twenty percent or more of all outstanding shares of a corporation, other than a corporation registered as an investment company under an act of congress entitled ‘Investment Company Act of 1940’, no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, who are entitled to vote in an election of directors may present a petition of dissolution on one or more of the following grounds:
“(1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders;
“(2) The property or assets of the corporation are being looted, wasted or diverted for non-corporate purposes by its directors, officers or those in control of the corporation.
“(b) The court, in determining whether to proceed with involuntary dissolution pursuant to this section, shall take into account:
“(1) Whether liquidation of the corporation is the only feasible means whereby the petitioners may reasonably expect to obtain a fair return on their investment; and
“(2) Whether liquidation of the corporation is reasonably necessary for the protection of the rights and interests of *30 ahy substantial number of shareholders or of the petitioners.” (Added L 1979, ch 217, § 1, eff June 17, 1979.)
2. Section 1111 (subd [b], par [3]) of the Business Corporation Law (judgment or final order of dissolution) provides: “In a special proceeding brought under section 1104 (Petition in case of deadlock among directors or shareholders) or section 1104-a (Petition for judicial dissolution under special circumstances) dissolution is not to be denied merely because it is found that the corporate business has been or could be conducted at a profit.” (Added L1979, ch 217, § 2, eff June 11, 1979.)
3. Section 1118 (subds [a], [b]) of the Business Corporation Law (purchase of petitioner’s shares; valuation) provides:
“(a) In any proceeding brought pursuant to section eleven hundred four-a of this chapter, any other shareholder or shareholders or the corporation may, at any time within ninety days after the filing of such petition or at such later time as the court in its discretion may allow, elect to purchase the shares owned by the petitioners at their fair value and upon such terms and conditions as may be approved by the court.
“(b) If one or more shareholders or the corporation elect to purchase the shares owned by the petitioner but are unable to agree with the petitioner upon the fair value of such shares, the court, upon the application of such prospective purchaser or purchasers, shall stay the proceedings brought pursuant to section 1104-a of this chapter and determine the fair value of the petitioner’s shares as of the day prior to the date on which such petition was filed, exclusive of any element of value rising from such filing.” (Added L1979, ch 217, § 3, eff June 11, 1979.)
E. APPLICABLE LAW
Critical for determination of petitioners’ causes of action is interpretation of the meaning of “oppressive” in section 1104-a (subd [a], par [1]) of the Business Corporation Law. Then the court must determine whether the agreed-upon facts of this case fit within an acceptable definition of “oppressive”. Lastly, should the controlling shareholders *31 conduct be held “oppressive”, the court must decide if dissolution is suitable in the circumstances.
In the absence of reported New York case law and statutory commentary, the court reviews the legislative context in which the statute was enacted, comments pertaining thereto, and to similar enactments. Unfortunately, specific commentary with regard to the enactment of section 1104-a of the Business Corporation Law is sparse; no Governor’s memorandum was issued (see, e.g., Schaeftler, 1979 Survey of New York Law, Corporations, Protection of Minority Shareholders — New Grounds for Judicial Dissolution, 31 Syr L Rev 129, 133-138).
Section 1104-a of the Business Corporation Law appears to have been adapted from section 97 of the ABA-ALI Model Business Corporation Act (1972 ed). At least 12 other States and the District of Columbia have similar statutes (see Conn Gen Stats Ann, § 33-382, subd [b] [“(h)alders of shares having at least one-tenth of the voting power * * * for election of directors”]; DC Code, § 29-93lb, subd [a] [“a shareholder”]; Fla Stats Ann, § 607.274 [“a shareholder”];-Ill Ann Stats, ch 32, § 157.86 [“a shareholder”]; Ind Stats Ann [code ed], § 23-1-7-3 [“any shareholder”]; Me Rev Stats Ann, tit 13-A, § 1115 [“a shareholder”]; Ann Code of Md, art 4, § 4-602 [“(a)ny stockholder” — applicable only to close corporations]; Minn Stats Ann, § 301.50 [“(a) shareholder”]; NH Rev Stats Ann, § 294.97 [“stockholders holding XA of (the) stock”]; Gen Stat of NC, § 55-125 [“a shareholder”]; Pa Stats Ann, tit 15, § 2107 [“a shareholder”]; Gen Laws of RI, § 7-1.1-90 [“a shareholder”]; Tenn Code Ann, § 48-1008 [“a * * * shareholder”]; W Va Code, § 31-1-134 [same standing requirement as New York — “one fifth in interest of the shareholders”]; memorandum to Governor’s counsel by its legislative sponsors, State Senator Pisani [S 3263] and Assemblymen Finneran, Lehner and Koppel [A 4408], NY Legis Ann, 1979, pp 143-144). Clearly, sections 1104-a, 1111 and 1118 of the Business Corporation Law are further expansions of those statutes. Sections 1101 through 1117 of the Business Corporation Law were enacted to recognize special problems to closely held corporations and to *32 liberalize criteria for judicial dissolution to help the shareholder^) in such situations who want(s) “out” (see Horn-stein, Supplementary Analysis of Business Corporation Law, McKinney’s Cons Laws of NY, Book 6, Business Corporation Law, Appendix 1; Henn and Alexander, Supplementary Analysis of Business Corporation Law, McKinney’s Cons Laws of NY, Book 6, Business Corporation Law, Appendix 2). Apparently, the legislators were influenced by the writings of Professor F. Hodge O’Neal, the leading authority on “squeeze outs” of minority shareholders. (See, e.g., O’Neal, Close Corporations [2d ed]; O’Neal, Oppression of Minority Shareholders; O’Neal, Close Corporations: Existing Legislation and Recommended Reform, 33 Business Lawyer 873.) A letter, dated May 29,1979 from Assemblyman Finneran, one of the bills’ cosponsors, to Governor Carey enclosed a section of Professor O’Neal’s book on Close Corporations, entitled “Squeeze Outs” of minority stockholders (Expulsion or Oppression of Business Associates); and a cover letter, dated May 30,1979, from Assemblyman Edward H. Lehner, another legislative cosponsor to the Governor’s counsel enclosing a memorandum prepared by counsel to the Assembly committee in which specific reference is made, at page 15, to O’Neal’s article in volume 33 of The Business Lawyer and to his “reasonable expectations test” for “oppression” therein. This court notes that the Court of Appeals most recently cited Professor O’Neal as a recognized authority on close corporations in another context in Zion v Kurtz (50 NY2d 92, 102).
Thus, to a great extent, a definition of “oppressive” depends on the special nature of close corporations as understood by the Business Corporation Law, relevant commentators and New York case law. (See, also, What Amounts to “Oppressive Conduct” under Statute Authorizing Dissolution of Corporation at Suit of Minority Stockholders, Ann., 56 ALR3d 358-377.)
In Matter of Gordon & Weiss (32 AD2d 279,281) the First Department noted “It is being increasingly realized that the relationship between the stockholders in a close corporation vis-a-vis each other in practice closely approximates the relationship between partners”. (Accord Nelkin v H.J.R. Realty Corp., 25 NY2d 543,552.) In another case involving a *33 closely held corporation, Matter of Voluntary Dissolution of Pivot Punch & Die Corp. (15 Misc 2d 713), Judge Jasen (now an Associate Judge of the Court of Appeals but then sitting in Erie County Supreme Court) recognized the inherent similarity to a partnership situation and stated (p 716): “there exists between partners the highest degree of fidelity, loyalty, trust, faith and confidence.” (See, also, Matter of Groll, NYLJ, May 10,1979, p 10, col 6 [Smith, J.]; Dissolution of Corporation on Ground of Intracorporate Deadlock or Dissension, Ann., 83 ALR3d 458-511.)
In further characterizing the owners of close corporations, O’Neal has commented in volume 33 of The Business Lawyer (p 884): “Many participants in closely held corporations are little people’, unsophisticated in business and financial matters. Not uncommonly a participant in a closely held enterprise invests all his assets in the business with an expectation, often reasonable under the circumstances even in the absence of an express contract, that he will be a key employee in the company and will have a voice in business decisions.”
Both O’Neal and other commentators have developed a definition for oppression in terms of “the reasonable expectations of the minority shareholders in light of the particular circumstances of each case.” (33 Business Lawyer 873, 886; see 55 Va L Rev 1043,1064.) These commentators note that the expectations of the parties in a close corporation differ in distinct ways from investors in a large corporation.
This court, too, recognizes that in a close corporation the bargain of the participants is often not reflected in the corporation’s charter, by-laws nor even in separate signed agreements. The parties’ full understanding may not even be in writing but may have to be construed from their actions. Unlike their counterparts in large corporations, minority shareholders in small corporations often expect to participate in management and operations. “Furthermore, there generally is an expectation on the part of some participants that their interest is to be recognized in the form of a salary derived from employment with the corporation” (Exadaktilos v Cinnaminson Realty Co., 167 NJ Super 141, 154, citing 1974 Ariz St LJ, 409, 411-413; see, also, *34 O’Neal, 33 Business Lawyer 873; 55 Va L Rev 1043). These reasonable expectations constitute the bargain of the parties in light of which subsequent conduct must be appraised.
Obviously, oppressive conduct is distinct from illegal or fraudulent (see distinctive use of “or” in Business Corporation Law, § 1104-a, subd [a], par [1]; Gidwitz v Lanzit Corrugated Box Co., 20 Ill 2d 208). A number of American cases have cited the English formulation of “oppressive” as: “burdensome, harsh and wrongful” conduct, “a lack of probity and fair dealing in the affairs of a company to the prejudice of some portion of its members.” (Scottish Co-op. Wholesale Soc. v Meyer [1959] AC 324, 342, 364, cited by White and P & W Oil Co. v Perkins, 213 Va 129; Baker v. Commercial Body Bldrs., 264 Ore 614; Fix v Fix Material Co., 538 SW2d 351 [Mo]; Exadaktilos v Cinnaminson, supra.) In another context, New York has said “oppressive” means conduct that is unjustly burdensome, harsh or merciless (Domus Realty Corp. v 3440 Realty Co., 179 Misc 749, affd 266 App Div 725).
In examining case law examples of oppression in close corporations, O’Neal has catalogued a variety of techniques used to frustrate minority shareholder expectations. Removal of minority shareholders from corporate offices, employment and access to information are particular examples of freeze-out techniques (O’Neal, Oppression of Minority Shareholders, §§ 3.01-3.11).
Moreover, given the language and intent of the statute, a New York court’s examination of “oppressive conduct” need not be confined merely to effect on the shareholder in his sole role as shareholder. While the New York statute does not employ the broad language of, for example, section 14A:12-7 (subd [1], par [c]) of New Jersey Statutes Annotated (which specifically directs examination of the effect of corporate conduct in minority shareholders “in their capacities as shareholders, directors, officers, or employees”), New York’s section 1104-a of the Business Corporation Law directs the court to consider more than “fair return on their investment” (Business Corporation Law, § 1104-a, subd [b], par [1]) and also to probe “protection of the rights and interests of *** the petitioners” (Business Corporation *35 Law, § 1104-a, subd [b], par [2]). Arguments that seek to deflect judicial remedies upon the grounds that the worth of the minority shareholder’s investment has not disminished or has even increased are countered by section 1111 (subd [b], par [3]) of the Business Corporation Law which specifically directs that “dissolution is not to be denied merely because * * * the corporate business has been or could be conducted at a profit.” Obviously, minority shareholders in close corporations have a difficult time trying to recoup the worth of their investment in the limited available market. The new amendments to the Business Corporation Law (L 1979, ch 217, §§ 1-3) enlarge the options available to such complaining shareholders.
Clearly, section 1104-a of the Business Corporation Law determines that oppression of the “rights and interests” of minority shareholders in a close corporation is an abuse of corporate power. These rights and interests derive from the expectations of the parties and special circumstances that underlie the formation of close corporations. The court may determine the understanding of the parties as to the role the complaining shareholder is expected to play from agreements and evidence submitted. The court can then decide whether the controlling shareholders have acted contrary to that understanding or, in the language of the statute, “have been guilty of * * * oppressive actions toward the complaining shareholders”.
F. CONCLUSION
Accordingly, this court is empowered under subdivisions (a) and (b) of section 1118 of the Business Corporation Law to determine the respective fair market values as of the day prior to the date the petition was filed, of petitioner’s shares in both respondent corporations. These factual issues are hereby referred to Trial Term, Part 7, for assignment to hear and report, with recommendations. Pending receipt of the report, final determination of this proceeding is held in abeyance.
Counsel are directed to file a conformed copy of this order with the Office of Referees, Room 308-M, 60 Centre Street, *36 New York, New York, within 10 days after publication hereof for the purpose of obtaining a calendar date.