OPINION OF THE COURT
Edward H. Lehner, J.
Motions 26, 189 and 195 of the calendar of October 9 are consolidated herewith for decision.
The motion by petitioner is to dissolve Gene Barry One Hour Photo Process, Inc. (the Corporation) pursuant to section 1104-a of the Business Corporation Law and for the appointment of a receiver and related relief.
The cross motion by the Corporation seeks (1) a stay of the dissolution proceeding pursuant to subdivision (b) of section 1118 of the Business Corporation Law in order to determine the “fair value” of petitioner’s shares of the Corporation and (2) consolidation of this proceeding with an action instituted by petitioner pursuant to CPLR 3213.
The cross motion of the Attorney-General, to which there is no opposition, requests that any order dissolving the *560 Corporation contain a provision (1) deferring distribution of corporate assets until all franchise taxes are fully paid and (2) directing the Corporation to file franchise tax reports and remittances for its last filing period.
FACTS
The Corporation, organized in New York State, is owned equally by three families: Taines, Barry and Rafton. A son of each family was to be an operating employee with the fathers to “supervise, guide and consult”. The business that the corporation intends to operate is a chain of retail stores designed to develop film within one hour. The date of incorporation is not stated, but it would appear to have been some time in the latter part of 1980.
The parties did not enter into any shareholders’ or any other written agreement with respect to the operation of the Corporation and many organizational formalities, including adoption of by-laws, do not seem to have taken place prior to institution of this proceeding.
On August 8, 1981 at a meeting of the board of directors the petitioner and his son were removed as officers and employees of the Corporation and a notice was sent to all corporate employees by Michael Rafton, as chairman of the board, that said persons were so removed and that in the future “all operations shall be conducted by Mssrs. Barry, Barry, Rafton and Rafton and you will be responsible solely to them”.
At a shareholders’ meeting held on August 31, a new board was elected consisting of Gene Barry, Michael Barry, Philip Rafton and Michael Rafton.
Petitioner instituted this proceeding for dissolution pursuant to section 1104-a of the Business Corporation Law on August 28. By letter dated September 28 (allegedly not mailed until Oct. 6) the Corporation offered, pursuant to section 1118 of the Business Corporation Law, to purchase the shares of the petitioner for “$10,000, payable in cash”, which amount the letter .stated “is equal to the fair value of the equity interest”. The offer had certain other provisions relating to repayment of petitioner’s loan to the Corporation.
*561 petitioner’s contentions
It is alleged that the conduct of the Raftons and the Barrys, as owners of two thirds of the Corporation’s outstanding shares, is “oppressive” as that term is used in section 1104-a in that the petitioner and his son have been effectively frozen out of the business of the Corporation. Petitioner’s son is stated to be the “creator and moving force behind the Corporation” and to have “left his former job, relocated in New York and became a full time employee of the Corporation at a salary well below that of his prior position”. Petitioner is also alleged to have “established a residence in New York for purposes of overseeing the operations of the Corporation”.
Petitioner argues that the Corporation is a “jural party only and that, therefore, it cannot assume an adversarial position” and that the answer of the Corporation “is ineffective to put in issue any of the allegations of the petition”. Petitioner also claims that the stay provisions of section 1118 may not be triggered by the offer to purchase as (a) the Corporation has not agreed to purchase the shares at “fair value”, but rather at a specified amount, (b) the offer was not authorized by the board, and (c) the Corporation does not have adequate surplus to pay “fair value” with the consequence that the election is “ineffective by reason of BCL § 513”.
THE CORPORATION’S CONTENTIONS
The affidavit of Michael Barry claims that petitioner in early 1981 “embarked on an unlawful scheme to wrest control of the Corporation to the exclusion of the Raftons and the Barrys” and petitioner’s conduct was “unlawful and disruptive to the business of the Corporation” and therefore petitioner and his son “were duly discharged as directors, officers and employees”. However, no facts are stated to substantiate such claims.
Although the answer to the petition claims that petitioner is not entitled to dissolution, no motion to dismiss was made. Rather, by cross motion the Corporation seeks a stay of the proceeding so that the court may make an “appropriate determination” of the “fair value” of petitioner’s shares.
*562 PRIOR STATUTORY PROVISIONS
Under a statute in effect between 1896 and 1926, a single shareholder or director had standing to petition for dissolution. (Code Civ Pro, § 2420, as amd by L 1896, ch 569.) This statute was amended in 1929 (L 1929, ch 650) and drastically limited the standing requirements to holders of one half of the shares entitled to vote in an election of directors. Certain changes to the statute were again enacted in 1944 (L 1944, ch 176). A report by the Law Revision Commission recommending these changes specifically stated that a restoration of the law as it had existed between 1896 and 1926 was not being proposed and that “[t]he holder of a single share should not be allowed to force a dissolution opposed by all the other shareholders, even if a deadlock in the directorate exists.” (1944 Report of NY Law Rev Comm, p 354, NY Legis Doc, 1944, No. 65, p 6.)
A report prepared in 1958 for the Joint Legislative Committee to Study Revision of the Corporation Laws proposed that the judicial dissolution provisions be expanded to allow, as previously, standing to “any” shareholder, and also recommended expansion of the grounds for dissolution. (Consultant’s Report, No. RR-70, Joint Legis Comm to Study Rev of Corporation Laws [1958].) The report recognized that the judicial dissolution section had its strongest impact with respect to close corporations. At the heart of its recommendations was the recognition that close corporations are in fact chartered partnerships and should be subject to considerations similar to those governing the dissolution of partnerships. However, when the Business Corporation Law was enacted in 1961, the recommendation contained in the report, which would have generally granted standing to a single minority shareholder, was not followed.
THE 1979 AMENDMENTS
The provisions of the Business Corporation Law under which the petitioner has moved and the Corporation cross-moved were enacted as part of chapter 217 of the Laws of 1979, effective June 11 of that year. Such sections read as follows:
*563 “§ 1104-a. Petition for judicial dissolution under special circumstances
“(a) The holders of twenty percent or more of all outstanding shares of a corporation, other than a corporation registered as an investment company under an act of congress entitled ‘Investment Company Act of 1940’, no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, who are entitled to vote in an election of -directors may present a petition of dissolution on one or more of the following grounds:
“(1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders;
“(2) The. property or assets of the corporation are being looted, wasted, or diverted for noncorporate purposes by its directors, officers or those in control of the corporation.
“(b) The court, in determining whether to proceed with involuntary dissolution pursuant to this section, shall take into account:
“(1) Whether liquidation of the corporation is the only feasible means whereby the petitioners may reasonably expect to obtain a fair return of their investment; and “(2) Whether liquidation of the corporation is reasonably necessary for the protection of the rights and interests of any substantial number of shareholders or of the petitioners.”
“§ 1118. Purchase of petitioner’s shares; valuation
“(a) In any proceeding brought pursuant to section eleven hundred four-a of this chapter, any other shareholder or shareholders or the corporation may, at any time within ninety days after the filing of such petition or at such later time as the court in its discretion may allow, elect to purchase the shares owned by the petitioners at their fair value and upon such terms and conditions as may be approved by the court.
“(b) If one or more shareholders or the corporation elect to purchase the shares owned by the petitioner but are unable to agree with the petitioner upon the fair value of *564 such shares, the court, upon the application of such prospective purchaser or purchasers, shall stay the proceedings brought pursuant to section 1104-a of this chapter and determine the fair value of the petitioner’s shares as of the day prior to the date on which such petition was filed, exclusive of any element of value arising from such filing.”
THE “OPPRESSION” OF THE MINORITY
These new sections created remedies for minority shareholders of close corporations and may be considered a legislative recognition of the fact that the relationship among shareholders of such corporations closely approximates that among partners. (See Matter of Gordon & Weiss, Inc., 32 AD2d 279.)
Under section 62 (subd 1, par [b]) of the Partnership Law, unless there is a contrary agreement amongst partners, any partner can cause its dissolution. However, to dissolve a corporation under the new statute, more is necessary than the desire to “get out”. A shareholder must own at least 20% of the outstanding shares and establish one of the grounds set forth in section 1104-a of the Business Corporation Law. It should be noted that these new provisions closely parallel those in several other States. For a summary of such statutes, see the opinion of Justice Ryp in Matter of Topper v Park Sheraton Pharmacy (107 Misc 2d 25).
The provision of section 1104-a most likely to be presented to a court and that which is submitted here is a claim of “oppression” of the minority. A definition of the term is not to be found in the statute. In Matter of Topper (supra) reference is made to Dean F. Hodge O’Neal’s definition (33 Business Lawyer, 873, 885) which is in terms of “reasonable expectations of the minority shareholders in light of the particular circumstances of each case”. This definition was referred to in a memorandum sent on May 30, 1979 by the undersigned, as a lead sponsor of the legislation now before the court, to the Governor urging his approval thereof.
In Matter of Beshar (NYLJ, Feb. 18, 1981, p 6, col 1) the court cited with approval a definition of “oppression” as being a “viable departure from the standards of fair *565 dealing and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely”.
Here, there are no facts asserted to contradict the allegations of petitioner that (1) he and his son had every expectation of active involvement in the operations of the business, (2) they were so involved prior to removal, and (3) his son had relocated in New York to devote his full time to the operation of the business. Moreover, there are no facts alleged stating the circumstances leading to the removal other than certain conclusory allegations in the Barry affidavit. Clearly, petitioner and his son have now been frozen out of a business in which they expected to participate with two partner families.
In Wilkes v Springside Nursing Home (370 Mass 842, 848) the Massachusetts court, under facts somewhat similar to those herein held, without benefit of a statute, that by terminating a minority shareholder’s employment and severing him from the directorate and corporate office that the majority breached a fiduciary duty owed to the minority, which is similar to the “ ‘fiduciary duty in the operation of the enterprise that partners owe to one another.’ ” Further, such discharge was found to (p 850) “effectively frustrate the minority stockholder’s purposes in entering on the corporate venture”. The case was then remanded for a determination of damages suffered by the removed shareholder. Under the New York statute there is no provision for damages, only an authorization for a “divorce and property settlement”.
The court finds from the undisputed facts that the actions of the majority in eliminating the petitioner and his son from the active operation of the Corporation in which they had participated, and in which they had every reasonable expectation of being able to continue to participate, constitutes “oppressive” conduct.
STANDING OF THE CORPORATION
Since the Corporation is permitted to elect to purchase under section 1118 of the Business Corporation Law, it clearly is entitled to appear and obtain a stay of the dissolution proceeding authorized by that section. (See Matter of Fleischer, 79 AD2d 636.)
*566 In light of the court’s conclusion that the statutory basis for dissolution has been met, the issue as to whether the Corporation was entitled to oppose such petition (which it has not seriously done in the submitted affidavits) is moot. In a recent case involving this section the corporate entity was permitted to challenge the petition. (Matter of Beshar, supra.)
Establishing that the Corporation is legally and financially able to pay the fair value of the shares under the limitations prescribed in section 513 of the Business Corporation Law is not a condition precedent to the grant of the stay mandated by section 1118.
THE VALIDITY OF THE OFFER TO PURCHASE
Although the letter of the Corporation dated September 28, offering to purchase petitioner’s shares may not, because of the specified purchase price of $10,000, constitute the election to purchase required to trigger the stay, the court finds that the answer of the Corporation and the affidavit of Michael Barry on its behalf constitute an election to purchase at fair value. However, to clear any ambiguity, since subdivision (a) of section 1118 grants the Corporation 90 days from the institution of the suit or such additional time as the court may allow to make such election, the court will require before the signing of an order staying the dissolution that the Corporation execute a clear, unambiguous and unconditional letter electing to purchase the shares of petitioner at “fair value” as of August 27, 1981.
THE CONSOLIDATION MOTION
On September 16, petitioner instituted a separate action in this court pursuant to CPLR 3213 seeking repayment of loans of $215,000 allegedly made by petitioner to the Corporation. Although at the time of submission of the special proceeding, no answer had been interposed in that action, the Barry affidavit alleges that each of three families invested approximately $230,000 in the Corporation, with a portion to be treated as capital and a part as loan, but that no final agreement was ever reached on the proportions.
*567 The foregoing motion was submitted to Mr. Justice Blangiardo and is presently sub judice before him.
Should summary judgment be granted on that motion, the motion to consolidate would become moot. But if denied, it would seem clear, considering the alleged uncertainty with respect to the nature of the investments of the participants, that the determination of such issue is inextricably intertwined with the determination of “fair value” of petitioner’s shares. Therefore, pursuant to the discretion provided in CPLR 602, the court will order consolidation of this proceeding with the CPLR 3213 action contingent on a denial of the motion for summary judgment.
Under normal circumstances, the court would order a reference to hear and report with recommendations with respect to the fair value of the shares. However, in light of the petitioner’s right to a plenary trial in the action, the court will, in the event consolidation occurs by reason of denial of such motion, authorize a preference of the trial of the matter so that upon the filing of a note of issue, statement of readiness and payment of the appropriate fees, the consolidated action may be placed at the head of the appropriate calendar.
If the summary judgment motion is granted or if petitioner discontinues the separate action and permits the determination of whether his advances to the Corporation were debt or equity to be made in this proceeding, then the matter will be referred to Trial Term, Part 10, to hear and report with recommendations as to fair value of petitioner’s shares.
In light of the stay of the dissolution proceeding to be entered, there is no reason for the appointment of a receiver.
The letter from petitioner’s attorneys dated October 28, having been sent in violation of the court’s rules, was not considered.
Since dissolution is not to ensue, the relief requested by the Attorney-General is academic.
*568 Settle order providing for the foregoing alternative contingencies.