OPINION OF THE COURT
Ralph A. Beisner, J.
In the interest of efficiency and consistency, this court consolidates for decision these three actions as they appeared upon the Special Term Calendar for November 13, 1984.
The factual allegations in this matter are in dispute, but for the following pertinent facts. Petitioner and respondent were married in 1977, according to the separation agreement which has been presented as an exhibit. The corporation in question, Chariot Taxi, Inc., was incorporated on October 21,1982. Subsequent to that date, petitioner, Joseph Trocino, transferred 50% of ownership of the corporation to his wife, respondent, by giving her 50% of the shares of said corporation.
On July 18,1983, the parties entered into a separation agreement. On September 27,1983, the parties were divorced, and the *395 separation agreement was incorporated, but not merged into the divorce judgment. Under the equitable distribution heading of said separation agreement, the husband transferred to the wife 1% of his stock in Chariot Taxi, Inc., by the execution of the appropriate stock certificate with the voting rights thereon, which transferred to the wife controlling interest in the corporation and ownership of 51% of the outstanding issued shares thereof. The parties agreed that the wife should thereafter be responsible for the operation of Chariot Taxi, Inc., and was to retain her employment therein. Although not specifically set forth in the papers, it is apparent to the court that the husband’s participation in the day-to-day business operation of this corporation terminated following the separation agreement.
It is also undisputed that Chariot Taxi, Inc., is an ongoing corporate concern, operating a taxi business in the City of Poughkeepsie, County of Dutchess and State of New York.
On January 26, 1984, Joseph Trocino informed Marguerita Trocino of his intention to sell his stock in the corporation, representing a 49% minority ownership. On January 27, 1984, Marguerita Trocino accepted a first option to purchase said shares and offered a price of $8,000.
Thereafter, Joseph Trocino demanded an inspection of corporate records. Said inspection took place on March 21, 1984, and apparently was not satisfactory to Joseph Trocino. On March 21, 1984, a demand for further inspection was made, and same has not taken place. To date, no further inspection of corporate records have occurred.
This precipitated the filing of a petition of dissolution pursuant to sections 1104 and 1104-a of the Business Corporation Law of the State of New York to dissolve the corporation, by Joseph Trocino.
In the first instance, the court grants the counterclaim of Marguerita Trocino to dismiss the petition insomuch as it relies upon section 1104 of the Business Corporation Law. That section provides a substantive right of dissolution of a corporation on the petition of a shareholder in the event that certain requirements have been met. Upon perusal of the petition submitted by Joseph Trocino, the court concludes that section 1104 does not provide any substantive relief to petitioner. Accordingly, the petition is dismissed inasmuch as it seeks relief pursuant to section 1104 of the Business Corporation Law.
Petitioner proceeds in the alternative under section 1104-a of the Business Corporation Law. That provision provides any holder of 20% or more of all outstanding shares of a corporation *396 who are entitled to vote in an election of directors may present a petition of dissolution on various grounds. The petitioner has alleged all of the grounds included under section 1104-a of the Business Corporation Law, among them alleging that the corporation has been guilty of illegal, fraudulent and oppressive actions, and further that the assets of the corporation are being looted, wasted, or diverted for noncorporate purposes by its directors. The principal allegations of the petitioner are that Marguerita Trocino is removing money from the corporation under the guise of personal loans from the corporation to herself as majority shareholder, and that further the corporation has been uncooperative in providing information that would allow the petitioner to determine an adequate fair market value, which would facilitate sale of his stock to the majority stockholder.
The court notes that the petitioner’s allegations regarding illegal, fraudulent and oppressive actions are based entirely on an allegation that $37,000 in loans to the majority shareholder have occurred. This allegation is somewhat conclusory and there is no indication of how petitioner would demonstrate the occurrence of same.
The respondent’s answer does nothing but offer a blanket denial of this allegation. At a minimum this sets up a factual question which requires some resolution. However, this court does not now conclude that even a finding that said money has been loaned to a majority shareholder would require dissolution. Judicial -dissolution of closed corporations is only authorized where there is evidence of conduct which fairly minded people would find objectionable (Mardikos v Arger, 116 Misc 2d 1028). The availability of dissolution as a remedy vests a great deal of discretion in the court (Matter of Topper v Park Sheraton Pharmacy, 107 Misc 2d 25).* Furthermore, section 1104-a (subd [b], par [1]) of the Business Corporation Law provides that involuntary dissolution pursuant to said section should not occur unless it is the only feasible means whereby the petitioner may reasonably expect to obtain a fair return on an investment. It is this court’s impression that this petition was instituted out of frustration, that being the alleged uncooperative attitude of the respondent in facilitating an inspection of the corporate records.
This in and of itself does not amount to the typical fact pattern upon which dissolution would be granted. The oppressive conduct portion of section 1104-a of the Business Corporation Law has been interpreted to require a showing of an expulsion of a *397 shareholder from day-to-day operations of a company (O’Donnel v Marine Repair Servs., 530 F Supp 1199; Matter of Barry One Hour Photo Process, 111 Misc 2d 559); or where a minority shareholder has experienced a “freeze-out” of his interest (Matter of Topper v Park Sheraton Pharmacy, 107 Misc 2d 25, supra). It is the opinion of this court that subsequent to the separation agreement that the petitioner was no longer to participate in the day-to-day activities of the corporation. At this time, the court declines to exercise its discretion with respect to said petition, since same is premature. Rather, the court will endeavor to resolve this matter in an alternate fashion.
Under the authority of subdivision (a) of section 1118 of the Business Corporation Law, the respondent has elected to purchase the shares owned by the petitioner at their fair value. Pursuant to said statute, the terms and conditions of said purchase are to be approved by the court. Since it is apparent pursuant to subdivision (b) of section 1118 of the Business Corporation Law that the respondent and petitioner are unable to agree upon the fair value of the outstanding shares, the court pursuant to said statute stays the proceedings under section 1104-a of the Business Corporation Law. Under subdivision (a) of section 1118, the court shall determine the fair value of the petitioner’s shares as of one day prior to the date on which such petition was filed. Thus, petitioner has a remedy under section 1118, which under section 1104-a (subd [b], par [1]) provides for a feasible resolution of his problem without resorting to dissolution. The remedy is for a trial court to determine the fair market value of said shares, without resorting to dissolution. It is the opinion of this court that this is the appropriate vehicle for resolution of this matter, rather than the dissolution of an ongoing corporate concern operating in a profitable manner.
However, a hearing on the fair market value of the stock would be futile in the event that there is an uncooperative attitude toward discovery and inspection. Accordingly, this court is compelled to fashion an orderly procedure to facilitate same. Thus, the court is ordering that an examination before trial be conducted of the respondent. At 9:30 a.m. on December 17, 1984, both parties and their attorneys shall report to a Special Term of the Dutchess County Supreme Court, at the courthouse in Poughkeepsie, or at such other time, date and place as the attorneys may stipulate to in writing. At said time, the respondent is directed to produce all corporate records, including, but not limited to, any documentation which would support or refute petitioner’s allegation that a personal loan has been made from the corporation to respondent.
*398 Within 30 days after the conducting of this examination before trial, the petitioner shall file a note of issue for a hearing pursuant to subdivision (a) of section 1118 of the Business Corporation Law. The cost of this note of issue shall be borne by the petitioner.
Additionally, it is ordered that the dissolution proceeding under section 1104-a is stayed until such time as a hearing occurs pursuant to section 1118, or the matter is otherwise resolved in an amicable fashion.
Furthermore, the petitioner shall not in any manner or fashion interfere with the ongoing day-to-day business operations of Chariot Taxi, Inc. He shall not for any purpose whatsoever enter the corporate premises, or any premises associated with said « corporation. This order is in view of the unacceptable behavior which has been demonstrated to date in this case. In ordering this stay, the court is aware of and has considered the petitioner’s right to inspect corporate books and records, however, the examination before trial that has been ordered herein will facilitate same.
To the extent not herein mentioned, all other relief is denied.

 See, also, Gimpel v Bolstein, 125 Misc 2d 45.