In the Matter of DUBONNET SCARFS, INC., et al., Holders of One Half of All Outstanding Shares Entitled to Vote in an Election of Directors of Arkwright Mfg., Inc., Appellants. ARKWRIGHT MFG., INC., Respondent.

First Department, January 22, 1985

#### APPEARANCES OF COUNSEL

*Stephen Greiner* of counsel (*David G. Trachtenberg* with him on the brief; *Willkie Farr & Gallagher,* attorneys), for appellants.

*Michael L. Allen* of counsel (*Robert Alvin Adler* with him on the brief; *Simon & Allen,* attorneys), for respondent and Arthur Olshan.

#### OPINION OF THE COURT

Ross, J.

This case involves an appeal from a denial of a petition to judicially dissolve a closely held corporation.

In 1952, Arkwright Accessories, Inc., was incorporated in New York State. Subsequently, in 1959, there was a certificate filed

changing the name of this corporation to Arkwright Mfg., Inc. (Arkwright). Then in 1960, an amended certificate of incorporation was filed, reflecting this name change.

Arkwright is affiliated with Wright Manufacturing Co., Inc. (Wright), which is a New Jersey corporation. Besides its affiliation with Wright, Arkwright also has three wholly owned subsidiaries, whose names are: Parknell Corporation (Parknell), Knitwear Building Corporation (Knitwear), Park Sewing Corporation (Park); and, while Parknell is a New York corporation, Knitwear and Park are New Jersey corporations. The affiliated corporations, Arkwright and Wright, as well as the three subsidiaries, are engaged principally in the manufacture and sale of knitwear. Although the manufacturing facilities for these corporations are located in New Jersey, their sales offices are situated in Manhattan. Collectively, it appears that these firms employ 61 persons.

Arthur Olshan (Olshan) is the President of Arkwright. It is undisputed that since the 1952 incorporation of Arkwright, Olshan has been its chief executive officer and has had sole responsibility for all design, manufacture and sales. From the time of Arkwright's formation, Olshan has held 50% of the stock and the other 50% has been held by Dubonnet Scarfs, Inc. (Dubonnet), which is a New Jersey corporation.

Fred Thomases (Fred) and Florence Thomases (Florence) are husband and wife, and each of them owns 50% of the issued and outstanding capital stock of Dubonnet. Florence holds her Dubonnet stock in part as nominee for Fred and in part as nominee for a person named Harry Gordon (Gordon), who has allegedly been Fred's business partner for over 40 years.

In recent years Arkwright has operated profitably and its creditors have all been paid on a current basis.

Fred and Gordon personally guaranteed, to various financial institutions, the indebtedness of Brucol Industries, Inc. (Brucol), and certain of its subsidiaries and affiliates. Thereafter, on August 7, 1981, Brucol and these companies associated with it, filed for reorganization, pursuant to chapter 11 of the Federal Bankruptcy Code (US Code, tit 11). On July 2, 1982, as a result of the Brucol bankruptcy, Fred and Gordon were compelled, themselves, due to their guarantees, mentioned *supra,* to file for reorganization, pursuant to chapter 11 in the United States Bankruptcy Court for the Southern District of New York.

By order to show cause, brought in February, 1984, petitioners Dubonnet, Fred and Florence, as holders of 50% of the

outstanding shares of Arkwright, moved for its judicial dissolution, upon the basis of sections 1104 and 1104-a of the Business Corporation Law as well as the common law of the State of New York. In substance, the petitioners allege in their petition that the refusal of Olshan to buy them out, since Fred and Gordon need the cash to satisfy their personal creditors, justifies dissolution.

Respondent Arkwright cross-moved to, *inter alia,* dismiss the petition.

Special Term denied the petitioners' application, upon the basis that the petition does not state a cause of action, and, therefore, it granted the cross motion to dismiss. We agree.

Subdivision (a) of section 1104 of the Business Corporation Law sets forth the three reasons upon which *holders of one half of the outstanding shares* of a corporation can seek dissolution of the corporation and these shareholders can move on one or more of those grounds. The grounds are:

"(1) That the directors are so divided respecting the management of the corporation's affairs that the votes required for action by the board cannot be obtained.

"(2) That the shareholders are so divided that the votes required for the election of directors cannot be obtained.

"(3) That there is internal dissension and two or more factions of shareholders are so divided that dissolution would be beneficial to the shareholders."

In 1979, section 1104-a of the Business Corporation Law became law and it expanded the availability of judicial dissolution. Under section 1104-a of the Business Corporation Law, *holders of 20% or more of all outstanding shares* may petition for dissolution on one or both of two grounds. They are:

"(1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders;

"(2) The property or assets of the corporation are being looted, wasted, or diverted for non-corporate purposes by its directors, officers or those in control of the corporation." (Business Corporation Law, § 1104-a, subd [a].)

Besides the statutory grounds for judicial dissolution, set forth *supra,* there is also a common-law ground. Thus, the Court of Appeals has held in *Leibert v Clapp* (13 NY2d 313, 317) that there is a common-law right of dissolution, when management breaches its fiduciary duty to the minority shareholders.

We find that the instant petition fails to state a cause of action since this petition does not allege any facts that would justify a judicial dissolution on any of the grounds set forth either in sections 1104 or 1104-a of the Business Corporation Law, cited *supra,* or at common law.

Even though for over three decades, from Arkwright's 1952 formation to date, Olshan has exercised daily management control, nowhere in the petition do the petitioners allege that such control by Olshan has led to a single instance of internal dissension, which resulted in a deadlock over a management decision and/or a stalemate in the election of a director or directors and/or a performance of duty by Olshan that was either oppressive or illegal or fraudulent or breached a fiduciary responsibility.

It is evident from our analysis of the petition that the only reason that the petitioners initiated this dissolution proceeding was to satisfy Fred's and Gordon's personal creditors. The creditors' committee (Committee) in Fred's and Gordon's bankruptcy proceedings has demanded that, in order for Fred and Gordon to receive their final discharge from bankruptcy, they must each divest themselves, through their Dubonnet shares, of their ownership interest in Arkwright, by liquidating it and turning the proceeds over to these creditors. Furthermore, the Committee has advised Fred and Gordon that, if they do not comply with this demand, then the Committee will move against *other* assets of Fred and Gordon.

In the record before us is a copy of an affidavit, dated March 20, 1984, of Robert A. Wiener (Wiener), who is a certified public accountant and the accountant for the Committee. In his affidavit, Wiener states that he has audited the books of Arkwright on behalf of the Committee and "found that these companies had substantial liquid assets. Specifically, Arkwright and its affiliated companies had close to two million dollars in cash or cash equivalents * * * [and] this money * * * [is] being held in interest-bearing certificates of deposit. In addition, the companies had over one million dollars in near liquid receivables".

The only specific allegation leveled against Olshan in the petition alleges that sometime in September, 1981 Olshan and Fred agreed that, *inter alia,* Arkwright would acquire Dubonnet's 50% ownership interest in Arkwright at fair value, and at the time of this agreement Olshan allegedly misrepresented the value of Arkwright's assets. Although the petitioners charge Olshan with this misrepresentation, they do not set forth any facts that would justify the conclusion that, even if Olshan made

such a misrepresentation, it has in any manner interfered with the management of Arkwright. Incidentally, Olshan, in an affidavit, dated March 15, 1984, which was submitted in support of Arkwright's cross motion, denied that he ever made such a misrepresentation. Needless to say, the mere fact that a closely held corporation may have substantial liquid assets, and a stockholder has personal financial problems totally unrelated to the corporation do not, in and of themselves, state grounds for judicial dissolution within the meaning of the Business Corporation Law sections cited *supra,* or at common law (see *Matter of Kemp & Beatley* [*Gardstein*], 64 NY2d 63, which contains in the majority opinion the historical background in New York State of judicial dissolution of close corporations).

The petitioners present no legal authority that holds that a shareholder in a close corporation, who is in personal financial difficulty, which is unrelated to that corporation, can demand to be bought out, because he or she needs the cash to satisfy personal creditors, and that if such demand is not complied with, then such shareholder can seek the dissolution of that corporation.

We disagree with the dissent's contention that Olshan's alleged refusal to cause Arkwright to buy out the petitioners sets forth a ground for judicial dissolution under the Business Corporation Law sections cited *supra*. None of the facts or legal authority cited by the dissent supports the conclusion that the management of Arkwright has in any way been affected by this alleged refusal.

The allegations that Fred and Gordon are in their late seventies and have a pressing need for cash arouses our sympathy as it arouses the sympathy of the dissent. However, neither sympathy nor a shareholder's need for cash qualify as either a statutory or common-law ground for judicial dissolution.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Robert White, J.), entered May 1, 1984, which, denied the petitioners' application for dissolution and granted the respondent's cross motion to dismiss the petition, should be affirmed, with costs.

Asch, J. (dissenting). This proceeding seeks the judicial dissolution of Arkwright Mfg., Inc., a domestic corporation, pursuant to sections 1104 and 1104-a of the Business Corporation Law and the common law of the State of New York.

Arkwright is a privately held corporation which is owned by two groups of shareholders. Fifty per cent of the stock of Arkwright is owned by respondent Arthur Olshan. The other

50% is owned by petitioner Dubonnet Scarfs, Inc. (Dubonnet), a New York corporation. Petitioner Fred Thomases, who is in his late seventies, and his wife, petitioner Florence Thomases, each own 50% of the issued and outstanding capital stock of Dubonnet. Florence Thomases owns her stock in Dubonnet in part as nominee for her husband and in part as nominee for Harry Gordon.

The proceeding was necessitated by the urgent need of Fred Thomases and Gordon to convert their interests in Arkwright to cash. They are presently engaged in the final stages of approval of reorganization plans in connection with their personal bankruptcy proceedings. The Thomases seek to liquidate their Arkwright interest to satisfy the creditors' demands in the bankruptcy reorganization plan. If this is not done, other property belonging to them would be sold for that purpose.

The verified petition makes it clear that it is essential to the Thomases-Gordon group of shareholders to convert their interests in the corporations into cash. In addition, evidence submitted in support of the petition establishes that the corporations currently have substantial cash and other liquid assets which respondent Olshan could use, as an alternative to dissolution, to purchase the interests of petitioners in the corporations. Robert Wiener, a certified public accountant retained to analyze the value of Thomases' assets, has concluded that the Arkwright group has close to $2,000,000 in cash and cash equivalents. These liquid assets are being held in interest-bearing certificates of deposit and are not being used in the operation of the business. In addition, the companies allegedly have more than $1,000,000 in near liquid receivables.

Despite these facts, Olshan has refused to have the corporations purchase petitioners' interests at fair value. He has also refused to agree to the dissolution of the corporations so as to enable petitioners to realize value from their interests. Clearly, the petition adequately alleges that two factions of shareholders are divided concerning the fundamental questions of whether the corporations should be dissolved and what should be done with their substantial liquid assets. Plainly, also, it is alleged that dissolution would be beneficial to shareholders under the circumstances of this case. These allegations, if proven, would warrant dissolution under subdivision (a) of section 1104 of the Business Corporation Law.

The petition also seeks dissolution pursuant to section 1104-a of the Business Corporation Law and the common law of New York by reason of Olshan's alleged oppressive and fraudulent

conduct and his breach of fiduciary duty. In or about September, 1981, Olshan and Fred Thomases discussed the purchase of Dubonnet's 50% record ownership interest in Arkwright and Florence Thomases' 50% record ownership interest in Wright, an affiliated corporation under common ownership, including the fair value of the corporations. At that time, Olshan advised Fred Thomases that the book value of the Arkwright group was $4,000,000, which included a loan of $1,500,000 of doubtful collectability due from certain corporations owned by or affiliated with Brucol Industries, Inc., which itself has filed for reorganization under the Bankruptcy Code. Fred Thomases subsequently learned that the $4,000,000 book value figure did not, in fact, include the indebtedness from Brucol, and that the $4,000,000 book value figure had been otherwise understated. He now allegedly believes that the fair value of the Arkwright group at the time of these discussions in September, 1981, and today, was and is approximately $6,000,000. In short, petitioners assert that Olshan, who was then running the day-to-day operations of the companies, materially understated the value of the Arkwright group to Fred Thomases. Such conduct, if true, allege petitioners, was oppressive and fraudulent and constituted a breach of fiduciary duty.

On the return date of the petition, respondents moved to dismiss. Without allowing petitioners to conduct discovery and without ordering an evidentiary hearing, the court below denied the petition and granted respondents' motion to dismiss. This summary dismissal was in error.

Petitioners are entitled to judicial dissolution pursuant to section 1104 (subd [a], par [3]) of the Business Corporation Law because there is internal dissension and two or more factions of the shareholders are so divided that dissolution would be beneficial to the shareholders. Thus, section 1104 (subd [a], par [3]) provides that

"the holders of one-half of all outstanding shares of a corporation entitled to vote in an election of directors may present a petition for dissolution on * * * the * * * ground * * *

"(3) That there is internal dissension and two or more factions of shareholders are so divided that dissolution would be beneficial to the shareholders."

While section 103 of the General Corporation Law (the predecessor to Business Corporation Law, § 1104, subd [a]) authorized dissolution when the directors were divided "respecting the management of [the corporation's] affairs" (similar to Business

Corporation Law, § 1104, subd [a], par [1]) and when the stockholders could "not elect a board of directors" (similar to Business Corporation Law, § 1104, subd [a], par [2]), the Business Corporation Law added a new ground. Thus, section 1104 (subd [a], par [3]) of the Business Corporation Law authorizes judicial dissolution upon a showing that there is shareholder dissension as to matters *other* than the inability to elect a board of directors, as long as dissolution would be beneficial to the shareholders. It is not limited by its terms to dissension respecting "the management of the corporation's affairs," as held by Special Term.

The continued making of a profit by the corporation is not a complete bar to its dissolution (Business Corporation Law, § 1111, subd [b], par [3]).

A cause of action, therefore, for dissolution pursuant to section 1104 (subd [a], par [3]) of the Business Corporation Law was stated by petitioners. The petition sufficiently alleged internal dissension on the use of corporate assets (the certificates of deposit). There also was evidence that money was available to buy out petitioner Dubonnet. This would be without respondent corporation Arkwright actually going out of business (cf. Business Corporation Law, § 1118). As Dubonnet is simply the alter ego of the Thomases, it would be beneficial to the shareholder that the buyout take place. At the very least, a hearing should have been held on the petition's allegations. This is the usual procedure in Business Corporation Law dissolution matters where there are contested facts (see *Matter of Myers v Gold,* 77 AD2d 652).

The respondent Arkwright's, and Olshan's objections to dissolution created questions of fact, and Special Term erred in dismissing the petition simply on the papers and affidavits submitted (see *Matter of Wollman v Littman,* 35 AD2d 935). Even under the former law, section 103 of the General Corporation Law (with more narrow grounds, and restrictions on dissolution), evidentiary hearings were generally required on benefit to the stockholders from dissolution (see *Matter of Seamerlin Operating Co. [Searing — Merlino],* 307 NY 407, 417).

Even if reversal was not indicated under subdivision (a) of section 1104 of the Business Corporation Law, another ground asserted in the petition was section 1104-a of the Business Corporation Law, which reads in relevant part:

"(a) The holders of twenty percent or more of all outstanding shares of a corporation * * * may present a petition for dissolution on one or more of the following grounds:

"(1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders".

The petition tracked the statute. Thus, it alleged that Olshan was trying to "freeze out" the passive "partner," the Thomases, and prevent them from getting the fruits of their investment, and obtaining the cash to fund reorganization in family bankruptcy. This is a ground for section 1104-a relief (see *Matter of Kemp & Beatley [Gardstein]*, 64 NY2d 63; *Matter of Topper v Park Sheraton Pharmacy,* 107 Misc 2d 25). Certainly there was a factual question with respect to Olshan's alleged fraud (or oppressive conduct) raised by his refusal to allow dissolution of the corporation, or buyout, when the Thomases were in such financial trouble.

The matter of what is "oppressive conduct" is normally a factual determination (see *Matter of Topper v Park Sheraton Pharmacy, supra*). Relief to Olshan and buying out the Dubonnet interest at a fair price was available, if desired by him (see Business Corporation Law, § 1118; *Matter of Kemp & Beatley [Gardstein], supra; Matter of Delinko,* 85 AD2d 561).

It was not proper for Special Term to dismiss the petition without a hearing. I would therefore reverse, on the law, reinstate the petition and remand for such a hearing.

MURPHY, P. J., SULLIVAN and KASSAL, JJ., concur with ROSS, J.; ASCH, J., dissents in an opinion.

Order and judgment (one paper), Supreme Court, New York County, entered on May 1, 1984, affirmed. Respondent shall recover of appellants $75 costs and disbursements of this appeal.