In the Matter of the Dissolution of PUBLIC RELATIONS AIDS, INC. LEE LEVITT, Appellant-Respondent; RICHARD TOOHEY et al., Respondents-Appellants.

First Department, August 8, 1985

## APPEARANCES OF COUNSEL

*Eugene A. Wolkoff* of counsel (*Callahan & Wolkoff, P. C.,* attorneys), for appellant-respondent.

*Laurence Shiff* of counsel (*Shiff & Tisman,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

KASSAL, J.

This proceeding, commenced October 29, 1984, seeks an involuntary judicial dissolution of respondent Public Relations Aids, Inc. (PRA), pursuant to Business Corporation Law §§ 1104 and 1104-a. The petition alleges under Business Corporation Law § 1104, that there exists a deadlock in the management of the corporation between petitioner Levitt and respondent Toohey, each holding 50% of the outstanding shares and, further, that under Business Corporation Law § 1104-a, there has been oppressive conduct by Toohey sufficient to direct dissolution. Within 90 days after the petition, Toohey exercised the statutory option to purchase Levitt's shares under Business Corporation Law § 1118.

I

PRA is a domestic corporation, incorporated on November 26, 1958 by Levitt and Toohey, who had previously been partners in the business since 1957. The company is engaged in the computer field, selling electronic and print media contracts in the United States and Canada. It was organized with two directors, Levitt and Toohey, the latter serving as president and the former as executive vice-president and secretary. Both principals have identical written employment agreements with the

corporation, providing for a five-year term, ending December 31, 1981 and, thereafter, renewable for five-year periods, with the current to expire December 31, 1986. For the past five years, Toohey has served as chief operating officer, while Levitt, it is alleged, has been inactive in daily corporate affairs. On June 3, 1983, the board of directors resolved that Toohey be given "final authority on all aspects of the management" of the business, with all employees "regardless of contracts or stockholdings" to report to him. Levitt expressly approved that resolution.

The growing schism and antagonism between the parties escalated in January 1984, when Toohey suspended payment of Levitt's salary, directed the accounting department not to pay his expenses and advised him that his credit card would be canceled. According to Levitt, Toohey agreed to reinstate his salary only upon Levitt's personally guaranteeing corporate indebtedness in the sum of $350,000. Levitt also claimed that Toohey had improperly withdrawn corporate funds without the approval of the board of directors and obtained reimbursement for undocumented expenses. The conflict culminated in the commencement of this dissolution proceeding by an order to show cause, served upon respondent on November 5, 1984. Two days later, on November 7, Toohey purported to take steps to remove Levitt as executive vice-president and secretary, terminate his employment and prohibit him from having access to the corporate offices.

Following the institution of the proceeding, the parties become embroiled in a series of motions, which transferred to the judicial arena the corporate warfare which had been engaged in by them in the operation of the business. Thus, Levitt sought a preliminary injunction enjoining Toohey from (1) taking action to restrict petitioner's access to the corporate offices, (2) terminating petitioner's employment without approval of the board of directors and (3) utilizing the assets of PRA to pay attorneys retained to represent Toohey in this proceeding.

In response, on November 15, 1984, PRA served a demand to arbitrate (1) Levitt's claim for reinstatement as an employee and for salary after his termination, and (2) the corporation's claim for restitution of salary and expenses and damages for Levitt's misconduct. Arbitration was sought pursuant to a provision in the employment agreement, which contained a broad arbitration clause, providing that "[a]ny controversy or claim arising out of, or relating to this agreement, or the breach thereof, shall be settled by arbitration in the City of New York in accordance with the rules then obtaining of the American Arbitration Association".

One day later, on November 16, 1984, Toohey elected to purchase Levitt's shares pursuant to Business Corporation Law § 1118 and, in accordance with subdivision (b) thereof, moved by order to show cause for a permanent stay of the dissolution proceeding and for a hearing to determine the fair value of petitioner's stock. Levitt countered with a cross motion for leave to amend the petition to eliminate any reference to relief under Business Corporation Law § 1104-a, and to stay the arbitration demanded by PRA or, in the alternative, for disclosure in aid of arbitration, pursuant to CPLR 3102 (c).

## II

Special Term held that Toohey's election to purchase Levitt's stock under Business Corporation Law § 1118 operated as an automatic stay of the proceeding and referred the matter to Trial Term, Part 10, to determine the fair value of petitioner's shares as of the day prior to the date of filing of the petition. In doing so, the court rejected petitioner's claim that, where there was a deadlock between two equal shareholders, the only remedy available was under Business Corporation Law § 1104 and no relief could be obtained under section 1104-a. In moving to amend, Levitt had sought to remove from the petition any reference to Business Corporation Law § 1104-a and, in that way, avoid the election made by Toohey under Business Corporation Law § 1118, which, by its terms, was only applicable to proceedings brought pursuant to section 1104-a.

The court found Toohey's election to purchase to be valid and binding and, therefore, denied the cross motion, since the amendment would prejudice respondent by effecting a withdrawal of the offer to purchase the shares. Such a result, it was held, could have further "undesirable consequences" by virtue of the continuation of the dissolution proceeding and the resulting disruption of PRA's business, its customers and suppliers, as well as loss of jobs to PRA employees. The court, however, did grant Levitt injunctive relief to the extent of enjoining Toohey from restricting petitioner's access to the corporate offices and records and held that petitioner's claim for loss of salary should be raised in a separate plenary action. In staying arbitration, Special Term found that, since the corporation was deadlocked, there could have been no action by the board of directors to demand arbitration and that Toohey had no standing to invoke arbitration as a remedy since he was not a party to the agreement between Levitt and PRA. The additional claim by Levitt that Toohey had improperly used corporate funds for his own

personal use in payment of counsel fees was also referred to the Special Referee.

Thereafter, Toohey moved for reargument and modification of the order to (1) limit Levitt's examination of PRA's books and records to the period prior to October 29, 1984, when the dissolution proceeding was brought, (2) bar Levitt from reviewing these records at the corporate offices, (3) preclude petitioner from disclosing confidential information and (4) arbitrate the dispute as to petitioner's employment and salary in accordance with the arbitration clause in the employment agreement. In support of the application, Toohey claimed that, when Levitt had been accorded access to the corporate offices, he verbally and physically assaulted Toohey and disrupted the business operation. As a result, Toohey sought to hold any future examination of books and records at the offices òf PRA's counsel. Levitt denied any misconduct on his part nor any design to interfere with the business of the corporation. Toohey countered by claiming that Levitt was now associated with PRA's principal competitor, Media Distribution Services, thus requiring an order of confidentiality.

Special Term recalled its prior order and directed that Levitt designate an accountant to assist him in examining books and records for the period prior to October 29, 1984, which records were to be made available at PRA's premises, during regular business hours. The order also directed respondent to furnish Levitt with telephone and photocopying services. The court did, however, enjoin petitioner, his agents and attorneys, from disclosing any document or information which had not been previously disclosed to the public by PRA, and adhered to its prior holding that petitioner's claim for loss of salary should be pursued in a plenary suit, thus denying reargument of Toohey's assertion that the matter should be submitted to arbitration. Inasmuch as a notice of appeal from the first order had been filed and a hearing as to fair value stayed pending appeal, Special Term directed that the issues of the value of Levitt's stock and the propriety of Toohey's use of corporate funds to pay counsel fees should be submitted to a referee upon vacatur of the stay. The court, pursuant to Business Corporation Law § 1118 (b), did continue the stay of the dissolution proceeding, reconfirming its prior determination that the election by Toohey to purchase Levitt's shares was valid and binding.

### III

We are in agreement with much of Special Term's painstaking analysis, which attempted to avoid the continuation of a

most difficult and disturbing situation, which would affect the functioning, prosperity and best interests of the corporation. We have, in the past, recognized that where a corporate deadlock exists, the financial interests of the parties and the company requires expedition, either in proceeding with dissolution, leading to a public sale of the corporation, or effecting an agreement as to the terms of a private sale. (*Matter of Ronan Paint Corp.,* 98 AD2d 413, 421-422.)

Business Corporation Law § 1118 (a) evinces the Legislature's awareness of the underlying problem in providing that, in any proceeding pursuant to Business Corporation Law § 1104-a, "any other shareholder or shareholders or the corporation may, at any time within ninety days after the filing of such petition or at such later time as the court in its discretion may allow, elect to purchase the shares owned by the petitioners at their fair value and upon such terms and conditions as may be approved by the court." Under Business Corporation Law § 1118 (b), if such an election is made and the parties are unable to agree upon the fair value of the shares, the court must "stay the proceedings brought pursuant to section 1104-a * * * and determine the fair value of the petitioner's shares as of the day prior to the date on which such petition was filed". (*See, Matter of Barry One Hour Photo Process,* 111 Misc 2d 559; *cf. Matter of Fleischer* [*Gift Pax*], 79 AD2d 636.)

It has been held that the statutory buy-out remedy does not apply where relief is sought only under Business Corporation Law § 1104. (*Matter of Duffy* [*Duffy, Inc.*], 97 AD2d 694.) Contrary to petitioner's claim, a 50% shareholder in a close corporation is a holder "of twenty percent or more" of the corporation's outstanding stock and, thereby, entitled to petition for a dissolution under both Business Corporation Law §§ 1104 and 1104-a. Where relief in the alternative is sought under these statutory provisions, the proceeding is considered to be one brought pursuant to Business Corporation Law § 1104-a and, in accordance with Business Corporation Law § 1118, a 50% shareholder may elect to purchase petitioner's shares in accordance with the statutory procedure (*see, Matter of Cristo Bros.,* 64 NY2d 975; as to the court's discretion to fashion a remedy directing a buy-out where no election under Business Corporation Law § 1118 was made, *see also, Matter of Wiedy's Furniture Clearing Center Co.,* 108 AD2d 81). As applied here, the buy-out election was timely exercised within 90 days after the petition was filed, thereby mandating a stay of dissolution and a hearing to determine the fair value of the shares, as was directed at Special Term.

In a situation, as here, where there are two 50% shareholders, one who is solely responsible for the operation of the business and the other relatively inactive, the statutory buy-out remedy will generally not adversely affect the orderly functioning of the corporation or interfere with corporate profit or employee job stability. The legislative rationale in limiting the Business Corporation Law § 1118 buy-out procedure to proceedings brought pursuant to Business Corporation Law § 1104-a, and not to those under section 1104, is not set forth. The Court of Appeals did not discuss the issue in *Matter of Cristo Bros.* (*supra*), except to the extent of observing that the legislative history does not reflect the reason for that distinction. In any event, the holding in *Cristo* that the remedy is available where dissolution is sought under both statutes is dispositive here.

## IV

We also agree with Special Term that, taking into account the legislative intent underlying the buy-out option, the statute would be thwarted by permitting Levitt to amend the petition to delete any reference to section 1104-a, and thereby limit petitioner to relief under section 1104. The Legislature has determined, and, in our judgment rightly so, that the buy-out remedy accommodates the interests of the respective parties in ensuring the continued functioning of the business, while also protecting the financial interest of the shareholders and creditors. Under the circumstances here, an election to purchase, either by the parties agreeing or a statutory hearing as to fair value, is far preferable to the potential destructive impact attending dissolution of the corporation. Therefore, public policy considerations apply to preclude petitioner from interposing the requested amendment, which would delete any reference in the petition to Business Corporation Law § 1104-a and, thereby, avoid the buy-out procedure of Business Corporation Law § 1118.

Moreover, the amendment of a petition for corporate dissolution is governed by Business Corporation Law § 1107, not CPLR 3025 (a) which is applicable to amendment of pleadings, generally. Business Corporation Law § 1107 expressly controls the amendment of petitions for dissolution and permits the court, in its discretion, to grant an order amending the petition, "[a]t any stage, before final order". Inasmuch as the Business Corporation Law sets forth the specific procedures applicable in judicial dissolution proceedings, leave from the court is required to amend in accordance with section 1107. Contrary to petitioner's contention, he may not amend the petition as of right.

Under the clear provisions of the buy-out procedure in Business Corporation Law § 1118, once the corporation or a nonpetitioning shareholder elects to purchase the petitioner's shares, the dissolution proceeding must be stayed and a hearing held to determine the fair value of the stock. (*See, Matter of Cristo Bros.,* 64 NY2d, at p 977.) Petitioner may not impair the statutory buy-out remedy after an election has been made. His desire to do so in this case apparently reenforces Toohey's claim that Levitt's prime motivation is to disrupt the business and to intensify the personal animosity between the parties, which would be aggravated by the dissolution and eventual sale of the corporation or its assets. Taking into account the fact that, in the recent past, Levitt has not been active in the daily operation of the business, his legitimate goal in this litigation should be to secure a fair value for his interest in the business, not to fuel the fire of discontent between the parties.

## V

Business Corporation Law § 1104-a was intended to enhance the protection to minority stockholders who had been excluded from participating in the affairs of the corporation. The statute permits the holders of 20% or more of the shares of the corporation to seek dissolution upon certain specified grounds. Under this legislative provision, dissolution or redemption of shares may be obtained as a remedy for either illegal, fraudulent or oppressive conduct. (*See, Matter of Kemp & Beatley [Gardstein],* 64 NY2d 63; *Matter of Topper v Park Sheraton Pharmacy,* 107 Misc 2d 25; *Matter of Barry One Hour Photo Process, supra; Matter of Pivot Punch & Die Corp.,* 15 Misc 2d 713.)

In *Matter of Kemp & Beatley (Gardstein) (supra,* at p 74), the Court of Appeals, with reference to proceedings for dissolution under Business Corporation Law § 1104-a, held that "[e]very order of dissolution * * * must be conditioned upon permitting any shareholder of the corporation to·elect to purchase the complaining shareholder's stock at fair value (see Business Corporation Law, § 1118)." Chief Judge Cooke, writing for the unanimous court, further observed: "The purpose of this involuntary dissolution statute is to provide protection to the minority shareholder whose reasonable expectations in undertaking the venture have been frustrated and who has no adequate means of recovering his or her investment. It would be contrary to this remedial purpose to permit its use by minority shareholders as merely a coercive tool" (64 NY2d, at p 74).

As applied here, taking into account that there has been an election to purchase petitioner's shares under Business Corpora-

tion Law § 1118, the legitimate ends of the litigation would be fostered by petitioner expeditiously proceeding with a hearing to determine the fair value of his interest in the corporation. It is conceded that petitioner has not been overly active in the daily operation of the business. Thus, it is plain that it would be in his best interest to secure the fair value of his stock, not to continue with the litigation. Any other result would enable petitioner improperly to use this proceeding as "a coercive tool".

We also agree with the restrictions imposed by Special Term with respect to petitioner's examination of the corporate books and records, which were properly limited to the period prior to the commencement of the proceeding, especially in light of the claim that petitioner is now affiliated with a competitor. The record contains ample proof to support the conclusion that petitioner did attempt to disrupt the business when he was afforded access to the corporate offices. The limitations imposed in the order of March 28, 1985, adequately seek to avoid any recurrence and, at the same time, accord sufficient protection by enabling petitioner to obtain necessary records probative on the issue of the fair value of his interest in the business "as of the day prior to the date on which such petition was filed". (Business Corporation Law § 1118 [b].) In seeking additional access to the corporate offices and records, petitioner does not claim that the limited relief afforded him was inadequate or precluded a legitimate opportunity to establish the fair value of his stock. Instead, he objects to being relegated to "an interior windowless storeroom without the benefit of a desk or chair befitting an executive of a corporation" and refers to the fact that junior executives at PRA are afforded greater facilities. Such irrelevant personal concerns, however, have no bearing upon the legal issue in this proceeding.

The hearing to determine the fair value of Levitt's interest in the business should proceed as expeditiously as possible, directly following completion of his examination of relevant corporate books and records. Accordingly, we vacate the stay of the hearing which had been imposed pending disposition of the appeal and remand the matter for a hearing, as had been directed by Special Term.

## VI

It has been recognized that, in a dissolution proceeding, the corporation is a proper jural party "for the limited and passive purpose of rendering it amenable to the orders of the court". (*Matter of Clemente Bros.,* 19 AD2d 568, *affd* 13 NY2d 963.) The corporation has a nominal and limited status in a dissolution

proceeding but may not, and, as far as appears in this case, has not, assumed a "militant alignment on the side of one of two equal, discordant stockholders" (*Matter of Clemente Bros., supra,* at p 568).

At the hearing, the court may inquire as to the propriety of Toohey's use of corporate funds to pay his own attorneys in this proceeding. Of course, to the extent counsel fees were incurred by the corporation in its own defense, the corporation being a party respondent, corporate funds may be utilized for such purpose. There is no merit to petitioner's claim that, since the board of directors is deadlocked, counsel had not been properly retained.

In considering the issue of counsel fees, it is relevant to take into account (1) there exists a fiduciary relationship between the parties as stockholders in a close corporation (*see, Fender v Prescott,* 101 AD2d 418, 422, *affd* 64 NY2d 1077, 1079); and (2) it has been held that attorney fees incurred by a shareholder in defending a dissolution proceeding are not payable out of corporate funds (*see, Matter of Reinschreiber [Lipp],* 70 AD2d 596; *Matter of Cantelmo [Brewer-Cantelmo Co. — Daru, Vischi & Winter],* 278 App Div 800). Thus, in the usual dissolution proceeding, where the corporation appears as a nominal party and the proceeding amounts to a dispute between the shareholders, corporate funds may not be used in payment of counsel fees for the individual shareholders. Here, however, there appears to be merit to Toohey's claim that, inasmuch as he had already exercised his buy-out option under Business Corporation Law § 1118, all that remains is a determination of the fair value of Levitt's stock, and once that is made, he will be the beneficial owner of all of the corporate stock. Therefore, it may be found that, as to the period after Toohey's exercise of the buy-out option under Business Corporation Law § 1118, there was no impropriety in his use of corporate funds to pay his own legal expenses. Corporate funds could not, however, be properly used to pay his counsel fees incurred prior to that election. In any event, this will not affect the resolution of the value of the shares, which determination is to be made as of the date prior to the filing of the petition. (Business Corporation Law § 1118 [b].) In view of our direction that a hearing be held forthwith, the issue may be examined at that time and, if necessary, appropriately provided for in the judgment to be entered following the hearing.

## VII

We disagree, however, with so much of the determination as stayed the arbitration of petitioner's claims with respect to

the termination of his employment and payment of salary, relegating the parties to an independent plenary suit. In doing so, Special Term mistakenly assumed that arbitration had been sought by Toohey and concluded that he had no standing since he was not a party to the employment contract. However, the demand for arbitration here was by the corporation and the agreement unambiguously provides for arbitration of "[a]ny controversy or claim arising out of, or relating to this agreement, or the breach thereof". It is palpably clear that petitioner's claims of improper termination and entitlement to salary arise out of the employment agreement and, therefore, the parties should have been directed to proceed to arbitration.

Upon an application to stay arbitration, the function of the court is limited to "perform[ing] the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration." (*Matter of Nationwide Gen. Ins. Co. v Investors,* 37 NY2d 91, 96.) On such an application, the court is limited to determining if a valid arbitration agreement was made and if there is a dispute, whether tenable or not. The "valid agreement" referred to in CPLR 7503 relates to a valid agreement to arbitrate, which provision is separable from the substantive portions of the contract (*see, Matter of Weinrott [Carp]*, 32 NY2d 190, 198; *Matter of Prinze [Jonas]*, 38 NY2d 570, 576-577). As was observed in *Matter of Macy & Co. (National Sleep Prods.)* (39 NY2d 268, 270): "It is settled * * * that disputes involving acts of the parties subsequent to the making of a contract are properly embraced by a broad arbitration clause (*Matter of Riccardi [Modern Silver Linen Supply Co.]*, 45 AD2d 191, affd 36 NY2d 945, 946; *Matter of Lipman [Haeuser Shellac Co.]*, 289 NY 76; *Matter of Kahn [National City Bank]*, 284 NY 515)."

As applied here, the employment agreement contains a broad arbitration clause, requiring arbitration of any dispute arising out of or relating to the agreement. Under such a broad arbitration clause, "all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators." (*Matter of Lipman [Haeuser Shellac Co.], supra,* at p 80.) Clearly, the issues respecting the propriety of petitioner's termination of employment and his entitlement to salary were matters to be determined by the arbitrators in accordance with the demand served by the corporation.

Accordingly, the order, Supreme Court, New York County (Bruce McM. Wright, J.), entered March 28, 1985, which, *inter*

*alia,* (1) directed a reference to determine the fair value of petitioner's shares in accordance with respondent Toohey's election pursuant to Business Corporation Law § 1118 (b) and stayed further proceedings pending the reference, (2) stayed arbitration of the demand by respondent Public Relations Aids, Inc., of petitioner's claims relating to his termination of employment and entitlement to salary and expenses, relegating the parties to an independent plenary suit, (3) afforded petitioner limited access to the books and records of the corporation for the period prior to October 29, 1984, (4) enjoined petitioner, his agents and attorneys from disclosing confidential information, and (5) restrained respondent Toohey from preventing petitioner from receiving his mail and other property, should be modified, on the law, without costs or disbursements, only to the extent of (a) denying petitioner's application to stay arbitration, (b) granting respondent Toohey's application to compel arbitration in accordance with the demand heretofore served by the corporate respondent, (c) vacating the stay of the hearing to determine the fair value of petitioner's shares in the corporation as of the day prior to the date the petition was filed, which hearing shall proceed forthwith, upon completion of the limited disclosure afforded to petitioner by said order, and otherwise affirmed. At the hearing to be held, the court shall also determine the issue of respondent Toohey's use of corporate funds to pay his own attorneys' fees in defending this dissolution proceeding. The appeal from the order (same court), entered February 5, 1985, should be dismissed as superseded by the appeal from the said order of March 28, 1985, without costs.

KUPFERMAN, J. P., SANDLER, BLOOM and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on March 28, 1985, unanimously modified, on the law, without costs and without disbursements, only to the extent of (a) denying petitioner's application to stay arbitration, (b) granting respondent Toohey's application to compel arbitration in accordance with the demand heretofore served by the corporate respondent, (c) vacating the stay of the hearing to determine the fair value of petitioner's shares in the corporation as of the day prior to the date the petition was filed, which hearing shall proceed forthwith, upon completion of the limited disclosure afforded to petitioner by said order, and otherwise affirmed. At the hearing to be held, the court shall also determine the issue of respondent Toohey's use of corporate funds to pay his own attorneys' fees in defending this dissolution proceeding. The appeal from the order

of said court, entered on February 5, 1985 is dismissed as having been superseded by the appeal from the order entered on March 28, 1985, without costs.