In the Matter of GENNARO MUSILLI, Appellant-Respondent. WILTONIO RESTAURANT CORP., Respondent-Appellant. (Proceeding No. 1.)

In the Matter of GENNARO MUSILLI, Appellant-Respondent. GANVIL INDUSTRIES, INC., Respondent-Appellant. (Proceeding No. 2.)

In the Matter of GENNARO MUSILLI, Appellant-Respondent. 187 BROADWAY REALTY CORP., Respondent-Appellant. (Proceeding No. 3.)

In the Matter of GENNARO MUSILLI, Appellant-Respondent. TONVIL RESTAURANT CORP., Respondent-Appellant. (Proceeding No. 4.)

In the Matter of GENNARO MUSILLI, Appellant-Respondent. 1955 CENTRAL AVENUE REALTY CORP., Respondent-Appellant. (Proceeding No. 5.)

Second Department, December 28, 1987

### APPEARANCES OF COUNSEL

*Gollenbock & Barell (Robert S. Goodman* and *Peter D. Raymond* of counsel), for appellant-respondent.

*Ross & Cohen (Allen Ross, James F. Olivero* and *Michael A. Mulqueen* of counsel), for respondents-appellants.

### OPINION OF THE COURT

EIBER, J.

The petitioner is a minority shareholder owning 35% of the outstanding shares in each of the five respondents-appellants corporations which own and operate two restaurants in Yonkers, New York, and own the real estate upon which these restaurants are situated. He is one of the three directors in each of the corporations, but is not an officer and is not involved in their daily operations. Each of the corporations has as its only shareholders the same five individuals. An

agreement executed on December 17, 1979, by these five shareholders provides, *inter alia,* that 70% of all outstanding shares are required to form a quorum for a shareholders' meeting, while a quorum for a directors' meeting consists of 70% of the membership of the board of directors. Passage of any matter voted on at either shareholders' or directors' meetings requires 70% approval. Because the petitioner owns 35% of the shares and is one of only three directors, he effectively holds a veto power over all action by the directors and the shareholders.

By orders to show cause dated March 16, 1984, the petitioner commenced five proceedings seeking judicial dissolution of the respective corporations pursuant to Business Corporation Law § 1104-a. The five petitions, identical except for the names of the corporations, alleged that the other two directors had undertaken an "illegal, fraudulent and oppressive" course of conduct calculated to "freeze Petitioner out of his role" as director and shareholder, thereby frustrating his ability "to exercise a veto-power over all director and stockholder decisions". Specifically, he alleged, *inter alia,* that since the execution of the shareholders' agreement, these two directors had failed to hold stockholders' or directors' meetings, or to provide him with notice of meetings. He further alleged that certain wasteful actions had been taken without the required board approval, and that he had been denied access to the books and records of the corporations. Finally, he claimed he had not been repaid his capital investment, "nor any salary, dividend or other payment or remuneration similar to that paid to the other stockholders and directors".

At about the same time, the petitioner commenced a plenary action against Vilmo Fonte, one of the directors of the corporations, alleging that Fonte had breached a fiduciary duty to the petitioner by withholding his rightful share of the proceeds from a certain mortgage. The petitioner's interest in this mortgage arises from the shareholders' agreement.

Answering the petitions, the corporations denied the material allegations therein. As counterclaims, they elected to purchase the petitioner's shares at their fair value pursuant to Business Corporation Law § 1118. By notice of cross motion dated June 15, 1984, the corporations cross-moved pursuant to CPLR 602 (a) for an order consolidating the dissolution proceedings and the action against Fonte, and, as provided for in Business Corporation Law § 1118 (b), requested a stay of the proceedings and the scheduling of a hearing to determine the

fair value of the petitioner's shares. In an affidavit accompanying the cross motion, Fonte refuted in some detail the petitioner's allegations of misconduct and averred that he would be free to inspect the corporations' books and records.

On June 27, 1984, two days after the return date on the cross motion, the petitioner averred, in essence, that Fonte's affidavit satisfied him that he was not, as he had previously thought, "frozen out" of participation in the corporations. In particular, Fonte's offer to permit inspection of the books, a right already guaranteed pursuant to the shareholders' agreement, served to convince him that no "freeze out" existed. Therefore, because he knew he would be unable to prevail in the dissolution proceedings, he requested leave to discontinue the proceedings pursuant to Business Corporation Law § 1116 on the ground that it had been established that the alleged cause for dissolution did not exist.

Opposing this request, the corporations asserted, in effect, that the petitioner's claimed sudden realization that his allegations were untrue could not be believed, and noted that for more than one year, negotiations for a voluntary buy out of the petitioner's shares had been in progress, with the petitioner commencing the dissolution proceedings only after an impasse had been reached.

The Supreme Court, in an exercise of discretion pursuant to CPLR 3217 (b), granted the petitioner's application to discontinue the proceedings, but, in consideration of granting that relief, directed the petitioner to compensate the corporations for attorneys' fees incurred as a result of the institution of the proceedings. The court then dismissed as moot the corporations' counterclaims whereby they sought to exercise their right of election to purchase the petitioner's shares pursuant to Business Corporation Law § 1118. Also denied as moot was that branch of the corporations' cross motion which was to consolidate the plenary action with the special proceedings.

■ Under the circumstances of this case, we conclude that the Supreme Court improvidently exercised its discretion in permitting the petitioner to discontinue the proceedings, thereby depriving the corporations of their statutory buy-out remedy.

"Under the clear provisions of the buy-out procedure in Business Corporation Law § 1118, once the corporation or a nonpetitioning shareholder elects to purchase the petitioner's shares, the dissolution proceeding must be stayed and a hear-

ing held to determine the fair value of the stock" *(Matter of Public Relations Aids,* 109 AD2d 502, 509; *see, Matter of Cristo Bros.,* 64 NY2d 975, 977; *Matter of Fleischer [Gift Pax],* 79 AD2d 636). That statute affords the buy-out privilege "[i]n any proceeding brought pursuant to [Business Corporation Law § 1104-a]" (Business Corporation Law § 1118 [a]), and "unambiguously applies whenever a petition is filed alleging grounds specified in section 1104-a" *(Matter of Cristo Bros.,* 97 AD2d 274, 276, *affd* 64 NY2d 975, *supra).* Neither the statute itself nor subsequent case-law interpretations reveal a legislative determination that the election to purchase may be exercised only after the allegations in the petition have been established, but instead show an intent to provide the opportunity to elect in all cases where allegations are made pursuant to Business Corporation Law § 1104-a *(see, Matter of Cristo Bros.,* 64 NY2d 975, *affg* 97 AD2d 274, *supra).*

By the foregoing discussion, we do not mean to imply that under no circumstances would it be proper for a court to grant leave to discontinue such a dissolution proceeding at a petitioner's behest. However, under the circumstances presented here, the intent of the Legislature in enacting Business Corporation Law § 1118 would best be furthered by allowing the corporations to exercise their election to purchase the petitioner's shares at their fair value, to be determined by the court *(see,* Business Corporation Law § 1118 [b]).

Although the petitioner premised his application for leave to discontinue on the assertion that he had become convinced that the grounds for dissolution alleged in his petition had, in fact, never existed, it is at least reasonably clear that his desire to discontinue was, instead, a response to the corporations' exercise of their statutory prerogative to purchase his shares. The record indicates that the petitioner, who was inactive in the affairs of the corporations, had for some time been dissatisfied with the methods in which his passive investment had been handled. As evidence of this dissatisfaction, he retained attorneys more than one year prior to the institution of these proceedings, who, after first threatening unspecified legal action, commenced negotiations with the corporations in an effort to effect a negotiated buy out of the petitioner's shares. It is apparent that only after these negotiations proved unavailing did the petitioner commence the instant proceedings. Then, when, as was their statutory right, the corporations countered by electing to purchase his shares at their court-determined fair value, the petitioner sought leave to

discontinue, ostensibly on the ground that the corporations' denials of his allegations suddenly satisfied him that he had been in error concerning these allegations. We find this assertion somewhat disingenuous, especially in light of the negotiations between the parties preceding the commencement of these proceedings.

Indeed, it would appear that the proceedings were instituted in an effort to coerce the corporations into offering a higher price for the petitioner's shares than could be negotiated absent the threat of involuntary dissolution. "The purpose of this involuntary dissolution statute is to provide protection to the minority shareholders whose reasonable expectations in undertaking the venture have been frustrated and who has no adequate means of recovering his or her investment. It would be contrary to this remedial purpose to permit its use by minority shareholders as merely a coercive tool" *(Matter of Kemp & Beatley [Gardstein]*, 64 NY2d 63, 74, citing Davidian, *Corporate Dissolution in New York: Liberalizing the Rights of Minority Shareholders*, 56 St. John's L Rev 24, 59-60, nn 159-160).

In a situation where, as here, the petitioning minority shareholder is inactive in the operation of the businesses, the statutory buy-out remedy will generally not adversely affect the orderly functioning of the corporations, or interfere with corporate profit or employee job stability. Since the petitioner is not active in the daily affairs of the corporations, his legitimate goal should be to secure a fair value for his interest in the corporations, a result that would be in the best interests of all the parties to this litigation *(see, Matter of Public Relations Aids, supra,* at 508-510).

A further observation on this point is in order. In *Matter of Public Relations Aids (supra)*, the petitioner, a 50% shareholder, sought judicial dissolution under Business Corporation Law §§ 1104 and 1104-a, alleging that there existed a management deadlock as defined in Business Corporation Law § 1104, and that there had been oppressive conduct sufficient to warrant dissolution under section 1104-a. Immediately after the respondent elected to purchase the petitioner's shares pursuant to Business Corporation Law § 1118, the petitioner moved for leave to amend the petition to eliminate any reference to relief under section 1104-a in an attempt to avoid the election to purchase, an option not available under Business Corporation Law § 1104 *(see, e.g., Matter of Cristo Bros.,* 64 NY2d 975, *supra)*. Leave to amend was denied, the Appel-

late Division, First Department, noting that an election to purchase would be far preferable to the potential destructive impact attending dissolution *(Matter of Public Relations Aids, supra,* at 508).

The petitioner herein seeks to distinguish *Matter of Public Relations Aids (supra)* because here, since no allegations were brought pursuant to Business Corporation Law § 1104, elimination of the section 1104-a allegations would terminate the proceedings in their entirety. On this record, it is not clear whether the petitioner could raise allegations pursuant to section 1104, holding, as he does, only 35% of the outstanding shares *(see,* Business Corporation Law § 1104 [b]). However, since the petitioner holds an effective veto power over all board and corporate action, it is not inconceivable that he would seek to engineer a corporate deadlock situation in an effort to force the majority shareholders to institute a dissolution proceeding under Business Corporation Law § 1104, thereby achieving what could well be his ultimate goal, the involuntary dissolution of the corporations. This destructive possibility will be avoided by denying the petitioner's application for leave to discontinue and permitting the corporations to exercise their election to purchase the petitioner's shares at fair value.

Accordingly, the proceedings must be stayed and the matter remitted to the Supreme Court, Westchester County, for a hearing to determine the fair value of the petitioner's shares. The denial of the petitioner's application for leave to discontinue warrants the deletion of the award of attorneys' fees, which was made in consideration for the discontinuance.

The only facets of the dissolution proceedings which await resolution are the determination of the fair value of the petitioner's shares and the terms and conditions of their purchase. The resolution of these issues will not necessarily dispose of the issues raised in the plenary action which the corporations seek to consolidate with the special proceedings. Accordingly, that branch of the cross motion which was for consolidation was properly denied.

BROWN, J. P., LAWRENCE and WEINSTEIN, JJ., concur.

Ordered that the judgment is modified, in the exercise of discretion, by deleting the first, third and fifth decretal paragraphs thereof, and substituting therefor (1) a provision denying the petitioner's application to discontinue the proceedings, and (2) a provision staying the proceedings pending a determi-

nation of the fair value of the petitioner's shares; as so modified, the judgment is affirmed insofar as appealed from and cross-appealed from, with one bill of costs to the respondents-appellants corporations, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith.