Heredia v Lanco Brokerage Corp. (2026 NY Slip Op 50085(U))

[*1]

Heredia v Lanco Brokerage Corp.

2026 NY Slip Op 50085(U)

Decided on January 23, 2026

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 23, 2026
Supreme Court, New York County

Jony Heredia, Plaintiff,

againstLanco Brokerage Corp., Jesus Acosta, Kenia Tavarez, John Doe, Jane Doe, XYZ Corp. #1-5, Defendant.

Index No. 654613/2025

Attorney for Plaintiffs:
William A. Garcia of GARCIA & KALICHARAN
Attorneys for the Defendants:
Kari Parks of GUSRAE KAPLAN NUSBAUM PLLC
Genesis Torres of GUSRAE KAPLAN NUSBAUM PLLC
Timothy Francis Curtis of GUSRAE KAPLAN NUSBAUM PLLC

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 13, 14, 15, 16, 18, 19, 22, 23, 24, 25, 38, 50, 51, 52, 53, 54, 55, 108, 114, 116, 118 were read on this motion to/for PREL INJUNCTION/TEMP REST ORDR .
The following e-filed documents, listed by NYSCEF document number (Motion 002) 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 97, 98, 109, 115, 117, 119 were read on this motion to/for DISQUALIFY COUNSEL.
The following e-filed documents, listed by NYSCEF document number (Motion 005) 101, 102, 103, 104, 105, 106, 107 were read on this motion to/for STAY.
Plaintiffs bring this action seeking dissolution, under the common law and pursuant to New York Business Corporations Law §1104/§1104-a, of an insurance brokerage company called LANCO Brokerage Corp. ("Lanco"). Plaintiff Jony Heredia is the surviving spouse of Rosanna Monteagudo, who, prior to her death on August 31, 2023, owned a 50% interest in Lanco. Defendants Jesus Acosta and Kenia Tavarez own the remaining interest in Lanco at 35% and 15%, respectively. Lanco is named as a defendant in the complaint.
In 2023, Lanco, as sole policyowner and beneficiary, received approximately $500,000 in [*2]proceeds from a New York Life policy insuring Monteagudo's life. According to defendants, Lanco's partners always intended that if one of them passed away while Lanco was still operational, the survivors would buy out that partner's interest with Lanco assets, valued as of the time of the partner's death (see NYSCEF doc. no. 50 at pg. 9). Allegedly, the partners carried out this promise by purchasing the life insurance policy and paying all premiums so that defendants could buy out Monteagudo's equity if she predeceased them (id.).
Heredia, in his capacity as administrator and sole beneficiary of Monteagudo's Estate (the "Estate"), commenced the instant action to ascertain Lanco's value and to sell the Estate's shares. Heredia also brings this action derivatively on behalf of Lanco, standing in his deceased wife's shoes, alleging waste of corporate assets, self-dealing, breach of fiduciary duty and other misconduct on the part of the individual defendants. Plaintiffs assert that defendants Acosta and Tavarez have maintained exclusive control of the business operations since his wife's passing and have refused to provide access to Lanco's books, records, and other financial information necessary to determine the corporation's value. Plaintiffs further allege that the individual defendants hired their sons and other family members, and caused Lanco to pay salaries, dividends, and other de facto benefits without seeking consent from the Estate or issuing the same benefits to the Estate.
The following opinion resolves plaintiffs' motion for injunctive relief (mot. seq. no. 001), plaintiffs' motion to disqualify defendants' counsel (mot. seq. no. 002), and defendants' motion to stay all discovery except that necessary to determine fair value (mot. seq. no. 005).
Motion Seq. No. 001
In motion sequence no. 001, plaintiffs move by order to show cause requesting various restraints and other equitable relief, including, but not limited to, the appointment of a receiver, to compel defendants to provide full access to Lanco's financial records, and otherwise to mandate that plaintiffs be permitted to participate in the management and operation of the business. On August 7, 2025, the court signed plaintiffs' order to show cause, restraining defendants temporarily from spending any portion of the life insurance proceeds or from using Lanco funds to pay for defendants' legal fees, pending a formal hearing upon the request for a preliminary injunction.[FN1]
Oral argument on the motion took place on December 2, 2025.
"A preliminary injunction substantially limits a defendant's rights and is thus an extraordinary provisional remedy requiring a special showing" (1234 Broadway LLC v West Side SRO Law Project, 86 AD3d 18, 23 [1st Dept 2011]). The party seeking the drastic remedy must demonstrate: (1) a likelihood of success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) a balancing of the equities tipping in the movant's favor (CPLR 6301).
"[A] mandatory preliminary injunction (one mandating specific conduct), by which the movant would receive some form of the ultimate relief sought as final judgment, is granted only in unusual situations, where the granting of the relief is essential to maintain the status quo pending trial of the action" (Second on Second Café, Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 264 [1st Dept 2009] [internation quotations and citations omitted]). Such relief will be [*3]granted only where the right thereto is clearly established (id.). Plaintiffs fail to satisfy this heightened burden.
In support of their request for extraordinary relief, plaintiffs here allege that defendants have diverted funds of the corporation by hiring family members and paying de facto dividends. Plaintiffs argue that injunctive relief is necessary to preserve the status quo and to prevent further harm to plaintiffs' rights and interests. However, plaintiffs fail to demonstrate that the circumstances giving rise to this application are "unusual," such that mandatory relief is essential to maintaining the status quo.
By plaintiffs' own admission, defendants have exercised exclusive control of Lanco since Monteagudo's passing in 2023. Thus, an order compelling defendants to permit Heredia—who admittedly has no experience working as an insurance broker and has never previously been involved with Lanco's operations—to meaningfully participate in management of the business, would certainly change the status quo in this case.
Even if an order compelling Heredia's involvement in Lanco were necessary to preserve the status quo, plaintiffs have not established a clear right to such relief. Plaintiffs offer no facts in support of their claim that defendants' actions threaten to render any future judgment in their favor ineffectual. Rather, plaintiffs' moving papers merely assert that defendants paid themselves and their family members, while allegedly refusing to pay dividends to plaintiffs, "despite LANCO's clear solvency and the receipt of substantial insurance proceeds" (NYSCEF doc. no. 14 at pg. 16) (emphasis added).
Defendants do not dispute that they have managed Lanco for the last two years to the exclusion of plaintiffs. Even so, plaintiffs have not shown clear convincing evidence of misuse or complete dissipation of Lanco assets, or that such danger is threatened or imminent. Defendants stand to suffer prejudice from a change in the status quo, while plaintiffs are unlikely, in this court's view, to suffer irreparable harm by awaiting a final adjudication of their claims. On the other hand, plaintiffs would receive some form of the ultimate relief sought in this action if the requested preliminary relief is granted. Under these circumstances, mandatory injunctive relief is not warranted.
Actually, it is defendants who may suffer actual harm if they are enjoined from utilizing Lanco's assets to continue operations, or are forced to cooperate with Heredia in managing the business, given not only Heredia's admitted inexperience, but the apparent deterioration of the relationship between the parties. Thus, a balancing of the equities does not tip in favor of plaintiffs. Accordingly, those portions of the motion which seek mandatory injunctive relief must be denied (see Monarch Condominium v Raskin, 37 AD3d 288 [1st Dept 2007] [finding that plaintiff's request for relief was properly denied because it "did not seek to maintain the status quo, but rather sought the ultimate relief in the action"]).
Plaintiffs' request for appointment of a receiver must also be denied. A motion to appoint a receiver should be granted only where there appears to be a "special reason" for doing so (Itria Ventures LLC v Beaver St. Pizza LLC, 194 AD3d 447 [1st Dept 2021] [internal quotations and citations omitted]). Conclusory allegations of waste are insufficient to demonstrate that assets are in danger of loss, or removal from the state. This is especially the case where, as here, the Lanco operation has been run by defendants in the more than two years since Monteagudo's passing, and where there has been no evidence presented, at least as of this time, of complete dissipation of assets, irreparable loss, or threat of insolvency (see Mandel v Grunfeld, 111 AD2d 668, 668 [1st Dept 1985][finding no requisite danger where "for a number of months the parties . [*4]. . managed without a receiver"]). The mere fact that defendants have hired their relatives without plaintiffs' authorization does not, in and of itself, constitute corporate waste or mismanagement. This conduct, without more, fails to show a danger of irreparable loss.[FN2]
The court does not find facts, here, to support the argument that a special reason exists to justify the appointment of a receiver (see Hotel 71 Mezz Lender LLC v Falor, 14 NY3d 303, 317 [2010]). 
With respect to plaintiffs' broader request for temporary restraints, the court is not persuaded that such relief is warranted here. Plaintiffs do not present facts in support of its claims of misuse and corporate waste that demonstrate an immediate danger of irreparable harm if defendants' conduct is not restrained prior to a final adjudication on the merits. Certainly, plaintiffs can be compensated by a monetary award for any diminution in value of plaintiffs' shares.
While plaintiffs seek mandatory injunctive relief to include Heredia in the management of Lanco's business operations, the true relief plaintiffs seek is the value of the Estate's shares in the business itself. It is clear from the complaint that Heredia brings the instant action to preserve the corporation, for the sole purpose of safeguarding the value of the Estate's equity interest. BCL §1104-a provides such protection to minority shareholders, holding 20% or more of all outstanding shares, who have been excluded from participating in the affairs of the corporation and permits the shareholder to obtain dissolution, or to redeem its shares, as a remedy for illegal, fraudulent or oppressive conduct (Fedele v Seybert, 250 AD2d 519, 522 [1st Dept 1998] [emphasis added]).
The court notes that, on October 16, 2025, defendants filed a Notice of Purchase Election pursuant to BCL §1118(a) (see NYSCEF doc. no. 61). BCL "§1118(a) provides the non-petitioning shareholders with "an absolute right to avoid the dissolution proceedings and any possibility of the Company's liquidation by electing to purchase petitioner's shares at their fair value and upon terms and conditions approved by the court" (id.). This right of election is a defense mechanism available to the non-petitioning party in any proceeding brought pursuant to BCL 1104-a (id.). Once a party gives notice of the election, that party is obligated to purchase petitioner's shares at their fair value and petitioner is obligated to sell (see Matter of Penepent Corp., 96 NY2d 186, 192 [2001]). Under the facts and circumstances in this case, then, a valuation and buy-out of plaintiffs' shares is the appropriate remedy to preserve plaintiffs' interest and secure a fair return on said interest.
Courts prefer for dissenting minority shareholders to be bought out, rather than ordering dissolution, so that the corporation can continue to exist (see Smith v Russo, 230 AD2d 863 [2d Dept 1996]). In that there has been an election to purchase the Estate's shares pursuant to BCL §1118(a), "the legitimate ends of the litigation would be fostered by petitioner expeditiously proceeding with a hearing to determine the fair value of his interest in the corporation" (Petition of Levitt, 109 AD2d 502, 510 [1st Dept 1985]). Since Heredia has neither alleged nor shown himself to be active in the daily operations of the business, it is this court's view that it would be in plaintiffs' best interest to secure the fair value of the Estate's shares, and not to continue litigation that may diminish the value of the corporation (id.).
Plaintiffs' request for access to corporate books and records is granted. Shareholders hold [*5]both a common law and statutory right to inspect corporate books and records upon a showing of good faith and proper purpose (see Pomerance v McGrath, 143 AD3d 443, 444 [1st Dept 2016]). Determining the fair value of one's shares in connection with a statutory buyout constitutes a proper purpose for inspection, as well as investigating allegations of corporate waste or self-dealing by those in control (see Pokoik v 575 Realties, Inc., 143 AD3d 487, 488 [1st Dept 2016]; Madison Liquidity Investors 103 LLC v H. Augustus Carey, 291 AD2d 362 [1st Dept 2002]). Defendants' election does not terminate or suspend plaintiffs' inspection rights.[FN3]

Plaintiffs' request for an accounting is also granted. "The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest" (J-K Apparel Sales Co., Inc. v Jacobs, 189 AD3d 1011 [2d Dept 2020]; quoting Palazzo v Palazzo, 129 AD2d 261, 265 [1st Dept 1986]). Given that the deceased shareholder and individual defendants considered each other partners and held themselves out to the public as partners, the parties owe each other a fiduciary duty (see Le Bel v Donovan, 96 AD3d 415, 417 [1st Dept 2012]).
Here, the accounting shall be limited to any corporate financial transactions from the date of the deceased shareholder's death through the present, with particular attention to: (i) the receipt and disposition of any life insurance proceeds payable to Lanco; (ii) compensation paid to defendants or employees of Lanco; (iii) distributions, dividends, or other payments to shareholders; and (iv) any other transactions that may bear on the allegations of waste or self-dealing.
Additionally, to the extent that both common law and statute mandate plaintiffs' access to Lanco's corporate books and records, this court's granting of such access as preliminary relief need not be supported by a bond.
Finally, plaintiffs' request to participate in the management of Lanco is denied. While the Estate retains all rights incident to share ownership during the pendency of the valuation proceeding—including rights to information, to dividends if declared, and to challenge breaches of fiduciary duty—plaintiffs have no right to participate in day-to-day management or business decisions of the enterprise (see Matter of Smith, 154 AD2d 537, 539-539 [2d Dept 1989] [finding that the "'reasonable expectation' standard can be applied to a case in which a stock interest is inherited," but determined that petitioner's conduct did not "evidence a reasonable expectation of being an active participant in the management of the corporation[]," as petitioner "had never previously inquired . . . as to the affairs of the corporation[]"). The Section 1118 election contemplates that the electing shareholders will continue to operate the business pending the buyout, subject to their ongoing fiduciary obligations.
Motion Seq. No. 002
In motion sequence no. 002, plaintiffs move by order to show cause to disqualify defendants' counsel Gusrae Kaplan and Nusbaum ("GKN") from representing both Lanco and the individual defendants in defense against plaintiffs' derivative claims in this action. Plaintiffs [*6]argue that unwaivable conflicts exist due to the concurrent representation of both the corporation and the individual defendants accused of corporate misconduct. Plaintiffs argue that the interests of Lanco are directly in conflict with those of the individual defendants, and that, therefore, GKN's concurrent representation of the parties creates an irreconcilable conflict in violation of the New York Rules of Professional Conduct.
Generally, attorneys are prohibited from simultaneously representing clients with differing interests. However, an attorney may engage in simultaneous representation "where a disinterested lawyer would believe that the lawyer can competently represent the interests of each client" and each client consents to the representation after full disclosure of the implications, as well as the risks and advantages involved (Ferolito v Vultaggio, 99 AD3d 19, 27 [1st Dept 2012]).
Disqualification of defendants' counsel is not warranted here. To the extent the parties have differing interests with respect to the dissolution claims brought under BCL §1104 and §1104-a, such claims shall be stayed pursuant to defendants' exercise of election to purchase shares and pending a valuation hearing and determination before a referee (BCL §1118[b]). To the extent the parties' interests differ with respect to the derivative claims, the court is satisfied that dual representation is appropriate and that separate counsel is not warranted (Kleeberg v Eber, WL 2284724 [SDNY 2019] [finding that appointment of new counsel for the corporation would "do nothing to remove any potential taint from the underlying proceedings" as such new counsel would continue to act at the direction of the managing individual defendants]).
Motion Seq. No. 005
In motion sequence no. 005, defendants move by order to show cause for a stay of all discovery in this action, except that necessary to determine the fair value of the Estate's interest in Lanco.
While the dissolution proceeding itself is stayed upon defendants' filing of a Notice of Election pursuant to BCL §1118, plaintiffs' derivative claims are not similarly stayed (Gerzof v Coons, 168 AD2d 619 [2d Dept 1990] ["While it is true that once a majority shareholder . . . elected to buy out the petitioners pursuant to Business Corporation Law §1118, the allegations of misconduct contained in the petition became 'superfluous' with respect to whether the court should grant dissolution . . . it cannot be said that they became 'superfluous' for all purposes"]). The fair value of the shares must reflect the actual worth of the corporation, and plaintiffs' allegations of corporate waste, self-dealing, and other misconduct, if proven, may adversely impact the valuation (id.). Therefore, discovery concerning the derivative or non-dissolution claims must proceed in tandem with the determination of the shares' fair value as they are "inextricably intertwined," subject to appropriate limitations to ensure that discovery remains focused on valuation-related issues (see Edmonds v. Amnews Corp., 224 AD2d 358 [1st Dept 1996]). Discovery into matters collateral to valuation, or into the underlying dissolution claims, which are stayed, shall not be permitted.
Given the complexity of the valuation issues and the interrelated nature of the waste and misconduct claims, this matter is appropriately referred to a referee to hear and report on the fair value of plaintiffs' shares (see BCL§1118[b]). An order of reference allows the court to direct that a referee perform a particular act or to receive and report on evidence (see CPLR §4311; Mark C. Dillon, Practice Commentaries, McKinney's Cons Laws of NY, 2025 CPLR C4311). In this case, the referee shall be tasked with, first, determining the fair value of plaintiffs' shares as of the date specified by BCL §1118(b), and second, hearing evidence and making findings of [*7]fact and conclusions of law regarding plaintiffs' claims of waste of corporate assets, oppressive conduct, and corporate misconduct, to the extent that such claims may affect the valuation of the corporation or the fair value of plaintiffs' shares.
To the extent that the individual defendants have used Lanco funds to pay their legal fees prior to the issuance of this court's decision and order, the issue may be examined at the time of the hearing, and, if necessary, appropriately provided for in the judgment to be entered following the hearing (Petition of Levitt, 109 AD2d 502, 511 [1st Dept 1985]). The court declines to penalize defendants at this time for their purported violation of the TRO in connection with motion sequence 001. 
Accordingly, it is hereby
ORDERED that plaintiffs' motion for preliminary injunction (motion seq. 001) is denied, except to the limited extent that plaintiffs' requests for access to corporate books and records and for an accounting of corporate financial transactions from August 31, 2023 through the present are granted; and it is therefore
ORDERED that defendants shall make arrangements to provide plaintiffs access to Lanco's corporate books and records on or before February 27, 2026, and that defendants shall provide plaintiffs by February 27, 2026 an accounting of Lanco's corporate financial transactions from August 31, 2023 through the then-present date; and it is further
ORDERED that the temporary restraints ordered pursuant to the order to show cause dated August 7, 2025 (NYSCEF doc. no. 15) are hereby lifted, except to the extent that defendants shall not dispose of any portion of the insurance proceeds received in connection with the death of Rosanna Monteagudo prior to the entry of judgment in this action; and it is further
ORDERED that plaintiffs' motion to disqualify defendants' counsel (motion seq. 002) is denied; and it is further
ORDERED that defendants' motion to stay discovery in these proceedings, except that which is necessary to determine the fair value of the Estate's interest in Lanco (motion seq. 005), is granted in part and denied in part, as stated below:
(1) Defendants' motion to stay discovery in these proceedings is granted to the extent that discovery is stayed with respect to the portion of Count Thirteen of the complaint seeking judicial dissolution under the common law and BCL§1104/§1104-a, and with respect to the portion of Count Fifteen of the complaint asserting oppressive conduct, and(2) Defendants' motion to stay discovery in these proceedings is denied with respect to (i) plaintiffs' direct claims brought individually and on behalf of the Estate and (ii) plaintiffs' claims brought derivatively on behalf of Lanco; and it is furtherORDERED that a Judicial Hearing Officer ("JHO") or Special Referee shall be designated to hear and report to this court on the following individual issues of fact, which are hereby submitted to the JHO/Special Referee for such purpose of:
(1) determining the fair value of plaintiffs' shares, and(2) reporting on the issue of whether the defendant shareholders have dissipated the assets of the corporation or engaged in the misappropriation of funds and self-dealing, to the extent that such conduct has impacted the valuation of the corporation or the Estate's shares in said corporation; and it is furtherORDERED that the powers of the JHO/Special Referee shall not be limited beyond the limitations set forth in the CPLR and, in particular, shall include the power to "direct the parties [*8]to engage in and permit such disclosure proceedings as will expedite the disposition of the issues" (CPLR §4201); and it is further
ORDERED that this matter is hereby referred to the Special Referee Clerk for placement at the earliest possible date upon the calendar of the Special Referees Part (Part SRP), which, in accordance with the Rules of that Part (which are posted on the website of this court), shall assign this matter at the initial appearance to an available JHO/Special Referee to hear and report as specified above; and it is further
ORDERED that counsel shall immediately consult one another and counsel for plaintiffs shall, within 15 days from the date of this Order, submit to the Special Referee Clerk an Information Sheet (accessible at the "References" link on the court's website) containing all the information called for therein and that, as soon as practical thereafter, the Special Referee Clerk shall advise counsel for the parties of the date fixed for the appearance of the matter upon the calendar of the Special Referees Part; and it is further
ORDERED that on the initial appearance in the Special Referees Part the parties shall appear for a pre-hearing conference before the assigned JHO/Special Referee and the date for the hearing shall be fixed at that conference; the parties need not appear at the conference with all witnesses and evidence; and it is further
ORDERED that, except as otherwise directed by the assigned JHO/Special Referee for good cause shown, the trial of the issues specified above shall proceed from day to day until completion and counsel must arrange their schedules and those of their witnesses accordingly; and it is further
ORDERED that counsel shall file memoranda or other documents directed to the assigned JHO/Special Referee in accordance with the Uniform Rules of the Judicial Hearing Officers and the Special Referees (available at the "References" link on the court's website) by filing same with the New York State Courts Electronic Filing System (see Rule 2 of the Uniform Rules); and it is further
ORDERED that any motion to confirm or disaffirm the Report of the JHO/Special Referee shall be made within the time and in the manner specified in CPLR 4403 and Section 202.44 of the Uniform Rules for the Trial Courts.
DATE 1/23/2026
Robert R. Reed, J.S.C.

Footnotes

Footnote 1:Notably, at the time of the informal TRO conference, the individual defendants appeared without the benefit of counsel and raised no objection at such time to the imposition of the requested temporary restraints.

Footnote 2:Plaintiffs have presented no evidence that defendants' relatives are unqualified to perform the duties of the positions for which they were hired.

Footnote 3:Defendants' concerns regarding Heredia's alleged communication with competitors, while noted, do not provide a basis for denying inspection rights. Rather, such concerns are appropriately addressed through the entry of a protective order restricting the use and disclosure of Lanco's confidential business information.